300 P.3d 579

Lisa KOBASHIGAWA, as Personal Representative of the Estate of William S. Kobashigawa, Deceased, and Earl Kobashigawa and Gail Pei, as Co–Trustees of the Margaret M. Kobashigawa Revocable Living Trust and as Assignees of Margaret M. Kobashigawa, Deceased, Respondents/Plaintiffs–Appellants,

v.

Joseph M.K. SILVA, Defendant,

and

City and County of Honolulu, Petitioner/Defendant–Appellee.

No. SCWC–30639.

Supreme Court of Hawai'i.

April 26, 2013.

Traci Rei Morita, for petitioner.

Arthur Y. Park, Patricia Kim Park, and John C. McLaren for respondents.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK,[1] JJ.

Opinion of the Court by NAKAYAMA, J.

When a trial judge makes an unequivocal ruling that evidence is admissible at trial, the party that had sought to exclude such evidence by means of a motion in limine need not renew its objection when that evidence is introduced at trial in order to preserve the objection for appellate review.

In this case, Respondents/Plaintiffs–Appellants Lisa Kobashigawa and Margaret M. Kobashigawa (collectively, the Kobashigawas) brought a negligence action against Defendant Joseph M.K. Silva and Petitioner/Defendant–Appellee City and County of Honolulu (the City) for damages arising from a tragic incident in which William S. Kobashigawa was struck and killed while crossing a mid-block crosswalk shortly before sunrise during his morning walk. Although the Kobashigawas settled their claims against Silva, they proceeded to trial against the City; the jury found the City not liable. On appeal, the Intermediate Court of Appeals (ICA) vacated the jury verdict and remanded for a new trial, concluding that the circuit court plainly erred in giving a cautionary jury instruction that permitted the jury to consider evidence of the Kobashigawas' motive in filing suit and in allowing the City to comment on such motive in its closing argument.

In its application to this court, the City focuses on the cautionary jury instruction, as the ICA did, and argues to this court that the ICA gravely erred in concluding that (1) the instruction was an erroneous statement of the law and (2) the circuit court's issuance of the instruction satisfied the test for plain error review. In their response to the application, the Kobashigawas maintain that the instruction was an erroneous statement of law because a plaintiff's motive in bringing an otherwise valid lawsuit is generally irrelevant to resolution of the merits of the lawsuit. The Kobashigawas also argue that the ICA's application of plain error review did not constitute grave error, although they reiterate the argument made to the ICA that they were not required to make additional objections subsequent to the hearing on their pretrial motions in limine in order to preserve their claimed errors for appeal.

Although we agree with the ICA's ultimate conclusion that the circuit court's cautionary jury instruction regarding motive was a prejudicially erroneous statement of the law, we disagree with its conclusions that the Kobashigawas failed to preserve their objections to the admission of irrelevant evidence concerning their motive in filing suit and that such failure required it to resort to plain error review. Accordingly, as modified by this opinion, we affirm the ICA's judgment vacating the circuit court's judgment and remanding the case for a new trial.

## I. BACKGROUND

### A. Factual Background and Pre–Trial Proceedings

On December 22, 2005, shortly before sunrise at approximately 5:45 a.m., William was in the act of crossing a marked mid-block pedestrian crosswalk on Kamehameha Highway in Kāne'ohe when he was struck and killed by a truck driven by Silva. *Kobashigawa v. Silva*, 126 Hawai'i 62, 64, 266 P.3d 470, 472 (App.2011).

On April 21, 2006, Lisa, William's daughter,[2] and Margaret, William's wife, filed a

1. Associate Justice Pollack was initially assigned to this case as a substitute justice while he was a judge of the Circuit Court of the First Circuit, in place of Associate Justice Duffy, recused. He subsequently became a member of this court on August 6, 2012.

2. Lisa initially filed suit both in her individual capacity and in her capacity as Personal Repre-

complaint against Silva in the Circuit Court of the First Circuit[3] alleging negligence and negligent infliction of emotional distress and seeking special and general damages. On March 5, 2007, the Kobashigawas filed a First Amended Complaint adding the City as a defendant. The Kobashigawas' negligence claim against the City "included defective design and/or maintenance of Kamehameha Highway, including the pedestrian crosswalk and the surrounding trees, street signs and/or street lights at or near the crosswalk." *Kobashigawa*, 126 Hawai'i at 64, 266 P.3d at 472. On March 22, 2007, Silva then filed a cross-claim against the City, alleging that it was solely responsible for William's death. On March 18, 2008, the Kobashigawas filed the operative Second Amended Complaint against Silva and the City, realleging negligence and negligent infliction of emotional distress and adding a claim of loss of consortium and services as to Margaret only.

Gina Bailey was the only eyewitness to the accident, and she was deposed by the City on June 14, 2009. In addition to her recollection of what happened at the scene of the accident, she testified in pertinent part as follows:

> Q After the date of the accident, did you talk to anybody from the pedestrian's family?
>
> A Yes. That day, the police called me. He said that the family would like to speak to me, and they gave me the daughter's phone number. And I called her, thinking maybe she wanted to know about how her father died, if he said any last words, if he was suffering, anything like that, and I told her who I was, and the first thing out of her mouth was, "Would you be willing to testify if we sued?"
>
> Q Any other thing in that conversation?
>
> A No. I pretty much hung up, after that. I was so mad. She saw her father's death with money signs in her eyes.[4]

> Q And after that—do you recall the daughter's name?
>
> A I don't.
>
> Q After that conversation, did you have any other conversations with this daughter or any member of his family?
>
> A I did not.
>
> Q And you knew this was the daughter because she identified herself when you called?
>
> A The police told me that this was the phone number of the pedestrian's daughter.

Bailey also stated that she remembered making the call one day after the accident. Because Bailey no longer lived in Hawai'i, had moved to California, and was in the United States Navy and expected to be deployed overseas shortly thereafter, she would be unable to appear at trial; subsequently, the City designated Bailey's entire deposition transcript for use at trial, and Silva designated portions of the transcript.

On September 21, 2009, the Kobashigawas filed their Motion in Limine No. 1 seeking an order barring evidence and argument "by [the d]efendants speculating on [the Kobashigawas'] motives for pursuing the instant action, including, but not limited to, that [the Kobashigawas] have pursued claims against [the d]efendants for pecuniary reasons, i.e., [in] order to recover monetary damages against wealthy or 'deep pocket' defendants in the case." The Kobashigawas also filed their Motion in Limine No. 4 objecting to admission of certain parts of Bailey's deposition testimony. At a hearing on the motions on October 5, 2009, the circuit court denied Motion in Limine No. 1 and indicated its intent to give a cautionary instruction to the jury that such evidence could only be considered in determining bias, interest, or motive on the part of the Kobashigawas in filing suit:

> THE COURT: [. . .] With that, the [c]ourt will confirm its ruling, will deny the mo-

---

sentative of William S. Kobashigawa's Estate, but later stipulated to dismissal with prejudice of all claims filed as a plaintiff in her individual capacity.

**3.** The Honorable Rom A. Trader presided.

**4.** This sentence was barred from admission as calling for speculation pursuant to the court's partial grant of the Kobashigawas' Motion in Limine No. 4, discussed *infra*.

tion, does intend to issue a cautionary, which I will provide the parties with copies of what the [c]ourt has sort of drafted and then we can sort of visit this sufficiency or propriety of the way those are drafted at a later point. But basically, the [c]ourt does intend to sort of limit its consideration, any bias, interest or motive, if any is shown.

All right. So with that, that dispenses of plaintiff's number one.

With respect to Motion in Limine No. 4, the court granted the motion in part as to certain of Bailey's statements that called for speculation and denied the remainder of the motion.

## B. Relevant Trial Proceedings

Jury trial began on October 8, 2009. Meanwhile, the Kobashigawas reached a settlement with Silva; on October 9, 2009, the circuit court granted his petition for determination of good faith settlement filed on September 22, 2009 and dismissed all claims against him with prejudice. Thus, trial proceeded with the Kobashigawas as plaintiffs and the City as the sole remaining defendant. At trial, after Bailey's deposition testimony was read into evidence during the Kobashigawas' case-in-chief, the court read its cautionary instruction to the jury:

> You have heard testimony from one witness about certain statements attributed to a Kobashigawa family member following Mr. Kobashigawa's death. Your consideration of this evidence is limited to determining the existence or absence of any possible bias, interest or motive, if any, by plaintiffs in bringing this lawsuit and not for any other purpose. Specifically, you may not consider this evidence of negative character or negative conduct by plaintiffs or for any other purpose.

Later in the Kobashigawas' case-in-chief, Gail Pei, William's daughter and Lisa's sister, testified and disputed Bailey's allegations as to what was said during the phone call:

Q All right. Now, there also has been a deposition read from a Gina Bailey—

A Uh-huh.

Q —who said she called the house the day after she was given a number by the police to call the house to speak to a daughter.

A Uh-huh.

Q Did you speak to her?

A The day after? No, no, not at all.

Q Do you know if any of your sisters spoke to her?

A No one even mentioned her name, no.

Q Okay. The day after your father's death, that would have been December 23, 2005. Who was at the house?

A All of us were at my parents' house, but we were just so busy because the telephone was ringing off the hook. It was from the media and some—I don't know— some insurance person tried calling my mother. And it was crazy.

Q Okay. And so—but in all of those phone calls, you do not—and no one mentioned that a witness was calling?

A No.

Q Did you have a conversation with somebody named Gina?

A I did.

Q And when did that occur?

A That had to have occurred—it was—I had already gone back to work, so it was after the funeral. I'm not sure if it was January 5th. I know I was back at work because when the phone call came in, I was walking—it was after work, after 4:30, and I was walking to my car, which I parked at Ala Moana Shopping Center.

Q Did the person identify herself?

A Yes, she did.

Q And what did she say?

A She identified herself and she said that she got my number from the—I guess one of the police investigators, that I would be interested in speaking with her. So I took her phone call and the only thing I remember asking about her was—of course we want to know if my dad had any last words. But Gina went on to say that when she had gotten out of her car to go to him to see if she could render CPR, he was already passed.

Q Okay. And did you ask her if she wanted—would be a witness?

A No, I didn't.

Q Was there any talk like that?

A No.

Gail further stated on cross-examination by the City:

Q You mentioned that you didn't speak to a person the day after this tragedy; is that correct? You didn't speak to a person by the name of Gina Bailey on the phone that day?

A No. On that day things were pretty chaotic because we had a funeral to plan.

Q Certainly. I understand that. Did you speak to her though at any time? A person that you knew to be Gina Bailey?

A That was after I had already gone back to work.

Q Uh-huh.

A So it had to be about January 5th or somewhere around that area or that time because I know I had gone back to work because it was after work when I got that call on my cell phone.

Q Had you given the police your cell phone number to be contacted?

A Yes.

Q So had you asked the police to have the witness call you?

A Yes.

Q And it was to your—to the best you remember, it was after the new year, 2006?

A It had to be.

Q Okay. And then you spoke to the woman on the phone?

A Yes.

Q About how long did you speak to her?

A Maybe about a minute or two.

Q Yeah. And—and there was no—there was no mention about asking her to be a witness—

A No.

Q —to testify in any lawsuit?

A No.

Q It was just a brief one-minute conversation?

A Right.

Q Did it end on—on cordial terms, that telephone call?

A Yes, it did, because I only had one question for her, and that was, you know, if my dad had any last words.

Q And she told you obviously

A Yes.

Q —that—no. Okay.

At the close of trial, the court's cautionary instruction regarding bias, interest, or motive was included in the packet of jury instructions and was read to the jury again in full as part of the instructions before closing arguments. During the City's closing argument, it pointed to the Kobashigawas' possible monetary motivation to file a lawsuit:

And that brings us to Gina Bailey. Gina Bailey. We had her deposition testimony. You've heard she's in the Navy. She is the only person-the only eyewitness who does not have a stake in this case. She has no interest in the case. And if plaintiffs attempt to gloss over Ms. Bailey's eyewitness account of this really horrible accident, why would they do this? Well, there's one aspect. She told you in a day or so after the accident she got a call from Officer Lisa Reed to call one of the family members to talk about the accident. Ms. Bailey made that call, and the first words that Ms. Bailey told you that she heard was will you testify when we sue? Ms. Bailey obviously was appalled, recoiled and hung up the telephone just as her deposition testimony told you. Why hang up? It's obvious, she recoiled from the notion of looking to file a lawsuit within a day or so after this accident, not asking her about did my father suffer, did my father have any last words, what can you tell me, was he at peace, nothing like that?

Now, Ms. Pei says it was her who talked to Ms. Bailey and she said they had a nice conversation, a nice conversation about her father's last moments, totally in contradiction to Ms. Bailey's testimony. A nice conversation on the telephone about her father's last moments that lasted about one minute. Does that make any sense to you or does Ms. Bailey's testimony make more sense to you?

Before concluding, the City's counsel referred to the Kobashigawas' monetary motive one additional time:

And there's some other minor points that I want you to consider about damages, and it

comes with a question. Why is the City in this lawsuit? To collect monetary damages, but from whom do they seek this compensation? Well, of course, it's from the City. With this in mind, with those facts in mind, consider, this, Dr. Hayes[5] was hired to go to the scene to investigate it six days after the accident. Counsel was certainly hired earlier than six days after the accident to take him out there looks like. And Gina Bailey says that she spoke to a family member within a day or so after the accident who wanted her to testify in their lawsuit. Is this case simply about getting a collectable monetary award from the City when it was Mr. Silva who caused the accident?

On October 21, 2009, the jury then returned a verdict in favor of the City, indicating on the special verdict form that it did not find the City negligent.[6]

The circuit court entered its Judgment Pursuant to Special Verdict on March 25, 2010. After disposition of the City's motion for taxation of costs and a stipulation to dismiss all remaining claims, the Kobashigawas timely filed a Notice of Appeal on July 28, 2010.

### C. The ICA's December 2, 2011 Published Opinion

On appeal to the ICA, the Kobashigawas raised several points of error that were all related to the issue of Bailey's motive evidence and the circuit court's cautionary instruction to the jury on bias, interest, or motive.[7] Specifically, the Kobashigawas argued that the circuit court erred in: (1) denying Motion in Limine No. 1 and denying in part Motion in Limine No. 4, because the City could then introduce evidence related to

the Kobashigawas' motive for filing suit;[8] (2) allowing the parts of Bailey's deposition testimony referring to the Kobashigawas' motive, because such evidence was irrelevant and prejudicial; (3) giving the cautionary instruction because this served to place prejudicial emphasis on the Kobashigawas' alleged motive rather than cure any prejudice created by the evidence; and (4) allowing the City to comment on the Kobashigawas' supposed motive in its closing argument to the jury.

The City argued in response that the circuit court: (1) did not err in denying the motions in limine because those rulings are preliminary and cannot be deemed reversible error, and because Bailey's deposition testimony was relevant and admissible; (2) did not err in allowing Bailey's deposition testimony to be introduced because it was relevant, the court had already struck prejudicial portions of the testimony, and because the Kobashigawas introduced it themselves in their case-in-chief; (3) did not err in giving the cautionary jury instruction because the Kobashigawas did not object to the instruction and failed to propose a different instruction or alternate wording for the instruction, and because the jury instructions as a whole were not misleading or erroneous statements of the law; and (4) did not err in allowing the City to comment on motive in its closing argument because the Kobashigawas did not object and because the closing argument was based on reasonable inferences from the evidence presented during the trial.

In its opinion, the ICA agreed with the Kobashigawas that the circuit court erred in issuing the cautionary instruction to the jury because it was "an erroneous statement of the law." *Kobashigawa*, 126 Hawai'i at 65, 266 P.3d at 473. Although the ICA noted the

---

5. Dr. Charles Hayes testified as an expert witness for the Kobashigawas, having been qualified by the court as an expert in the field of physics with expertise in the area of lighting.

6. Margaret died on February 26, 2010, between the end of trial and the entry of judgment; consequently, Earl Kobashigawa, William's son and Lisa's brother, and Gail were substituted as plaintiffs in their capacity as co-trustees of the Margaret M. Kobashigawa Revocable Living Trust and as Margaret's assignees.

7. The Kobashigawas also argued that the circuit court erroneously awarded costs to the City because that award was based on the erroneous verdict. The issue of costs is not before this court.

8. Although the Kobashigawas preserved their objections to the introduction of such evidence and raised this point on appeal, the ICA did not address the point in its analysis. It instead proceeded directly to the error in the circuit court's cautionary jury instruction. *See Kobashigawa*, 126 Hawai'i at 65, 266 P.3d at 473.

City's argument that the "Kobashigawas did not object to this jury instruction at trial[,]" *id.*, it also stated that "even the complete failure to object to a jury instruction does not prevent an appellate court from taking cognizance of the trial court's error if the error is plain and may result in a miscarriage of justice." *Id.* (quoting *Montalvo v. Lapez,* 77 Hawai'i 282, 288, 884 P.2d 345, 351 (1994)) (internal quotation marks omitted).

The ICA thus stated that three factors must be considered in determining whether a trial court has committed plain error in a civil case: "(1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import." *Id.* (quoting *Montalvo,* 77 Hawai'i at 290, 884 P.2d at 353).

The ICA concluded that all three factors were met, and in proceeding to the point of error, held that the instruction misstated the law because "[i]n bringing an action, the motives of the plaintiffs are immaterial absent bad faith." *Id.* The ICA further held that in light of the improper jury instruction, the circuit court also erred in allowing the City to comment on the Kobashigawas' motive for bringing suit during its closing argument. *Id.* at 66–67, 266 P.3d at 474–75. The ICA thus vacated the circuit court's March 25, 2010 Judgment Pursuant to Special Verdict and remanded the case for a new trial. *Id.* at 67, 266 P.3d at 475.

The City timely filed its application on March 21, 2012. The Kobashigawas timely filed a response to the application on April 5, 2012.

## II. STANDARDS OF REVIEW

### A. Motion in Limine

 The granting or denying of a motion in limine is reviewed for abuse of discretion. The denial of a motion in limine, in itself, is not reversible error. The harm, if any, occurs when the evidence is improperly admitted at trial. Thus, even if the trial court abused its discretion in denying a party's motion, the real test is not

in the disposition of the motion but the admission of evidence at trial.

*State v. Eid,* 126 Hawai'i 430, 440, 272 P.3d 1197, 1207 (2012) (quoting *Miyamoto v. Lum,* 104 Hawai'i 1, 7, 84 P.3d 509, 515 (2004) (internal quotation marks, citations, and ellipsis omitted)). Furthermore, as we have often stated, "[a]n abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Hart v. Ticor Title Ins. Co.,* 126 Hawai'i 448, 455, 272 P.3d 1215, 1222 (2012) (quoting *Allstate Ins. Co. v. Pruett,* 118 Hawai'i 174, 179, 186 P.3d 609, 614 (2008)) (brackets in original).

### B. Jury Instructions

 When jury instructions, or the omission thereof, are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

*Nelson v. Univ. of Haw.,* 97 Hawai'i 376, 386, 38 P.3d 95, 105 (2001) (internal quotation marks and citations omitted).

## III. DISCUSSION

This case prompts us to examine when and how an objection to evidence admitted in a trial may be made and preserved for appellate review. In its opinion, the ICA correctly concluded that the circuit court erred in giving its cautionary jury instruction regarding the Kobashigawas' motive in filing suit. However, it conducted its analysis using plain error review premised on the fact that, during trial, the Kobashigawas did not make contemporaneous objections to the giving of the instruction or to references to motive in the City's closing argument. Thus, the ICA did not explicitly address the points raised by the Kobashigawas alleging error in the denial of their Motions in Limine No. 1 and No. 4, which in turn allowed the introduction of inadmissible evidence—mainly from Gina

Bailey's deposition testimony—related to the Kobashigawas' motives for filing a lawsuit and naming the City as a defendant. The ICA also arrived at its result without considering whether the Kobashigawas had properly preserved their objections by moving in limine to exclude all evidence and argument concerning motive.

Case law dating back to 1983 in this state and even earlier in others establishes that when a court makes a definitive pretrial ruling on the admissibility of evidence, the party that had unsuccessfully moved to exclude the evidence need not repeat essentially the same objection during trial in order to preserve a claim of error on appeal. Furthermore, although originating in case law, the so-called "definitive ruling" or "unequivocal ruling" exception has been made part of the rules of evidence both at the federal level as well as in a number of states. Although the Hawai'i Rules of Evidence (HRE) has contained the exception since the enactment of an amendment to Rule 103 in 2006, the ICA did not address the exception even though the Kobashigawas specifically referenced it in their argument that the circuit court had erred in allowing evidence and argument on motive during trial.

In affirming the ICA's judgment, we thus take this opportunity to clarify that when the trial court makes a definitive pretrial ruling that evidence is admissible, the party opposing that ruling need not renew its objection during trial in order to preserve its claim on appeal that the evidence was erroneously admitted. We further clarify that subsequent introduction of the evidence by the party opposing the ruling also does not waive that party's claim of error on appeal.

## A. Development of the Law of Motions in Limine in Hawai'i

"A motion in limine is a procedural device which requests a pretrial order enjoining opposing counsel from using certain prejudicial evidence in front of a jury at a later trial." [9] *Barcai v. Betwee*, 98 Hawai'i 470,

489, 50 P.3d 946, 965 (2002) (Acoba, J., concurring) (quoting *State v. Miura*, 6 Haw.App. 501, 504, 730 P.2d 917, 920 (1986)) (internal quotation marks omitted); *see also, e.g.*, 75 Am.Jur.2d *Trial* § 39 (2007) ("The purpose of a motion in limine is to prevent irrelevant, inadmissible, or prejudicial matters from being admitted in evidence or to exclude evidence when its probative value is outweighed by the danger of unfair prejudice." (footnotes omitted)); Johnny K. Richardson, *Use of Motions in Limine in Civil Proceedings*, 45 Mo. L.Rev. 130, 134 (1980) ("The prohibitive motion in limine requests the court to issue an order prohibiting opposing counsel and his witnesses from alluding to the prejudicial evidence in any manner during any portion of the trial proceedings.").

In an earlier case often cited in this jurisdiction for its discussion on motions in limine, the ICA stated:

> In essence, a motion in limine is generally made before or at the beginning of a jury trial for a protective order against prejudicial questions, statements, and evidence. It serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of trial.

*Lussier v. Mau–Van Dev., Inc.*, 4 Haw.App. 359, 393, 667 P.2d 804, 826 (1983) (citing *Twyford v. Weber*, 220 N.W.2d 919 (Iowa 1974); *Akins v. State*, 429 N.E.2d 232 (Ind. 1981); *Lagenour v. State*, 268 Ind. 441, 376 N.E.2d 475 (1978); Tom H. Davis, *Motions in Limine*, 15 Clev.-Marshall L.Rev. 255 (1966)). Even earlier, in an opinion issued when the motion in limine was still gaining acceptance as a standard pretrial procedure, the Texas Supreme Court noted:

> The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the

---

9. In addition to excluding evidence the opposing party seeks to introduce, a party may also seek an in limine ruling in advance of trial confirming that its own evidence is admissible. *See, e.g.*, 21

Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5037.10, at 758 & n. 6 (2d ed. 2005).

issues in the case or on the rights of the parties to the suit.

*Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366, 367 (1962) (emphasis added).

▮▮▮ As with other evidentiary rulings, "[t]he granting or denying of a motion in limine is within the trial court's inherent power to exclude and admit evidence." *Lussier*, 4 Haw.App. at 392, 667 P.2d at 826 (citing Jean C. Love, Note, *Pretrial Exclusionary Evidence Rulings*, 1967 Wis. L.Rev. 738); *see also Burrus v. Silhavy*, 155 Ind. App. 558, 293 N.E.2d 794, 798 (1973) ("The trial court's authority to entertain 'motions in limine' emanates from its inherent power to admit and exclude evidence. This inherent power to exclude extends to prejudicial questions and statements that could be made in the presence of a jury and thereby interfere with fair and impartial administration of justice."). Because a denial of a pretrial motion in limine to exclude evidence is generally regarded as an interlocutory order subject to reconsideration when the evidence is actually offered during trial, such "denial of a motion in limine [to exclude], in itself, is not reversible error. The harm, if any, occurs when the evidence is improperly admitted at trial." *Lussier*, 4 Haw.App. at 393, 667 P.2d at 826 (citing *Akins*, 429 N.E.2d 232; *Dayton Walther Corp. v. Caldwell*, 180 Ind.App. 539, 389 N.E.2d 723 (1979); *State v. Church of Nazarene of Logansport*, 268 Ind. 523, 377 N.E.2d 607 (1978)). Therefore, consonant with the principle that preservation of error is a necessary prerequisite for review of that error on appeal, when a motion in limine to exclude evidence is simply denied without a ruling on admissibility and the evidence is subsequently introduced by the opposing party during trial, "a proper objection at that time is necessary to preserve the error for appellate review." *Id.* (citing Love, *supra*; *Lagenour*, 376 N.E.2d 475; *Church of Nazarene of Logansport*, 377 N.E.2d 607; *Twyford*, 220 N.W.2d 919; *United States v. Traylor*, 656 F.2d 1326, 1333 n. 6 (9th Cir.1981); *Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir.1980); *Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963)). Thus, as is generally true for appellate review of any issue, the failure to object to evidence introduced after denial of a pretrial

motion in limine to exclude that same evidence will result in waiver of the objection on appeal. *See id.* (citing *Rojas v. Richardson*, 703 F.2d 186 (5th Cir.1983)).

Nevertheless, even at the time *Lussier* was decided, there was an exception to the general rule: "objections need not be renewed if the prior ruling on the motion in limine amounted to an unequivocal holding concerning the issue raised." *Id.* (citing *State v. Miller*, 229 N.W.2d 762 (Iowa 1975)). "Where a hearing was held, counsel presented legal arguments, and the trial court ruled whether or not the challenged evidence would be admitted at trial, there is no necessity of further objection to preserve such error for appeal." *Id.* at 393–94, 667 P.2d at 826 (citing *State v. Harlow*, 325 N.W.2d 90 (Iowa 1982)) (emphasis added). With these principles in mind, the *Lussier* court ultimately held that because the trial court simply denied the motion in limine without ruling on the admissibility of the evidence at that time, an objection was necessary at trial to preserve the error for appeal; because Lussier did not enter any objections on the record, he waived his challenge to the introduction of evidence concerning his motives in filing suit. *Id.* at 394, 667 P.2d at 826–27.

Subsequently, the law of motions in limine in Hawai'i was not revisited until 1995. In *Craft v. Peebles*, Teena Craft brought a medical malpractice action against Lawrence Peebles, M.D. and a products liability action against McGhan Medical Corporation for manufacturing allegedly defective breast implants. 78 Hawai'i 287, 290, 893 P.2d 138, 141 (1995). At the pretrial stage, Craft filed motions in limine seeking to exclude evidence of, in relevant part, her criminal record, alleged substance abuse, and alleged abuse by her spouse. *Id.* at 292, 893 P.2d at 143. The circuit court granted Craft's motion to exclude evidence of substance abuse, but denied as to evidence of her criminal record and her allegedly abusive spouse insofar as they were relevant to her claims of mental distress. *Id.* Because Craft did not make any objections to the introduction of the evidence at trial, this court noted that "objections not raised or properly preserved at trial will not be considered on appeal." *Id.* at 294,

893 P.2d at 145 (citing *MPM Hawaiian, Inc. v. Amigos, Inc.*, 63 Haw. 485, 630 P.2d 1075 (1981)).

Craft argued to this court that because the circuit court had already denied her pretrial motions in limine to exclude the evidence, the definitive ruling exception mentioned in *Lussier* applied and she was not required to make further objections at trial to preserve that point of error on appeal. *Id.* at 294–95, 893 P.2d at 145–46. This court disagreed with Craft's argument, stated that the rulings on the motions in limine "were preliminary in nature and were reserved for consideration during trial[,]" and quoted the following from the circuit court's ruling:

> [T]he [c]ourt is limiting its ruling solely on the grounds raised in the Motion in Limine. To the extent that the [c]ourt grants or denies a Motion in Limine, <u>if there are further foundational requirements that need to be met, the proponents of the introduction of the evidence shall also meet these foundational requirements</u>, so for example, if the [c]ourt is denying a motion in limine pertaining to the admission of certain evidence, the [c]ourt is only ruling on the issue raised in the motion.

*Id.* at 295, 893 P.2d at 146 (some brackets added and some brackets removed; emphasis added). This court thus concluded that the definitive ruling exception did not apply and that objections at trial were required because the circuit court "did not rule with certainty that the evidence concerning Craft's criminal record and family problems would be allowed into evidence. Instead, it expressly reserved the right to rule on the subject evidence until the foundational grounds were satisfied during trial." *Id.*

Shortly thereafter, the ICA commented on motions in limine in *Page v. Domino's Pizza, Inc.*, 80 Hawai'i 204, 908 P.2d 552 (App.1995). There, Michael Page brought suit claiming damages arising from an incident inside a Domino's store where the stool on which he had been sitting suddenly collapsed. *Id.* at 205–06, 908 P.2d at 553–54. On appeal, Domino's argued in part that the circuit court "erred in denying its motion in limine to exclude evidence of prior incidents involving the collapse of two other stools in the same Domino's store and in subsequently allowing admission of such evidence over objection." *Id.* at 205, 908 P.2d at 553. Based on its review of the motion in limine hearing, the ICA determined that the circuit court unequivocally decided that it would deny the motion in limine and admit Page's prior incident evidence. *See id.* at 208 n. 4, 908 P.2d at 556 n. 4 ("THE COURT: ... I'm going to allow it.... Yeah, I'm going to let it in."); *see also id.* at 205 n. 1, 908 P.2d at 553 n. 1 (citing *Craft*, 78 Hawai'i at 294–95, 893 P.2d at 145–46; *Lussier*, 4 Haw.App. at 393, 667 P.2d at 826) ("[W]e conclude that the trial court's ruling on Domino's motion in limine, see n. 4 *infra*, amounted to an 'unequivocal holding' concerning the issue raised, thereby removing the need for Domino['s] to renew its objection during trial.").

The most recent discussion on the law of motions in limine in this jurisdiction appears in the 2002 *Barcai* case,[10] in which the family of Francis Barcai brought a medical malpractice action against Jon Betwee, M.D. after Barcai was found dead in the psychiatric ward of Maui Memorial Hospital. 98 Hawai'i at 474, 50 P.3d at 950. Barcai was initially admitted to the hospital on June 11, 1990 in a psychotic state but became calmer and consented to psychiatric treatment after receiving antipsychotic medication. *Id.* at 473, 50 P.3d at 949. After treatment by several doctors yielded positive results, Barcai again began to suffer from panic and anxiety after June 13; on June 19, Dr. Betwee prescribed Stelazine, an antipsychotic medication, and although Barcai's condition alternately improved and worsened, he was found dead on the morning of June 27. *Id.* at 473–74, 50 P.3d at 949–50. An autopsy did not reveal the cause. *Id.* at 474, 50 P.3d at 950. Barcai's family filed a complaint against Betwee

---

**10.** In one other case, this court agreed with the appellant that an unequivocal pretrial ruling admitting evidence "was sufficient to preserve the issue for appeal." *Ditto v. McCurdy*, 98 Hawai'i 123, 130 n. 9, 44 P.3d 274, 281 n. 9 (2002) (citing *Craft*, 78 Hawai'i at 295, 893 P.2d at 146; *Page*, 80 Hawai'i at 205 n. 1, 908 P.2d at 553 n. 1; *Lussier*, 4 Haw.App. at 393–94, 667 P.2d at 826).

and Maui Memorial Hospital, primarily alleging medical negligence for failure to diagnose and treat the neuroleptic malignant syndrome [11] they claimed to be the cause of Barcai's death.[12] *Id.*

Before trial, Barcai's family filed motions in limine to exclude evidence of Barcai's prior violent acts, as well as any reference to Barcai's hospitalization at the Hawai'i State Hospital in 1989. *Id.* at 474–75, 50 P.3d at 950–51. The circuit court ruled that evidence of Barcai's history would be inadmissible because of an agreement between the parties that Dr. Betwee's treatment of Barcai was not based on Barcai's past behavior and an offer by Barcai's family to dismiss certain claims that would implicate the prior violence evidence. *Id.* at 475, 50 P.3d at 951. The next day, following jury selection, defense counsel asked the court to reconsider its ruling on the grounds that Dr. Betwee would testify that he had taken Barcai's history of violence into account during treatment and that Barcai's family had already stipulated to allowing Barcai's medical records, which contained references to Barcai's past violence and prior hospitalization, into evidence. *Id.* Although Barcai's family argued that such a change in the court's ruling would prejudice them because they could have questioned potential jurors for bias related to Barcai's prior violence if they knew the evidence would be admissible, the court reversed its earlier ruling and decided the evidence was admissible. *Id.*

On appeal, Barcai's family argued that the circuit court's reversal of its initial ruling after jury selection deprived them of their right to exercise their peremptory and for-cause challenges and therefore impaired their right to a fair and impartial jury because they relied on the initial ruling and did not attempt to excuse "those potential jurors who may have been biased against Barcai due to his history of violence." *Id.* at 476, 50 P.3d at 952. In an opinion written by Chief Justice Moon, this court rejected that argument: Barcai's family did not point to anything in the record that showed Barcai's past violence was even discussed at trial; therefore, Barcai's family could not demonstrate that they suffered any actual prejudice in jury selection or in the outcome of the trial. *Id.* In fact, this court specifically noted that the only evidence of Barcai's prior violence that was admitted had been offered by Barcai's family as part of the medical record to which both parties had stipulated; moreover, they had offered the evidence before the circuit court made its initial in limine ruling. *Id.* at 477, 50 P.3d at 953. This court therefore held that there was no impairment of Barcai's family's right to a fair and impartial jury because they "could not have relied upon the trial court's initial ruling in the first place to assume that they did not have to question potential jurors about their attitudes towards violence and cannot [on appeal] blame the trial court for their own decision not to do so." *Id.*

In a separate concurrence, Justice Acoba, joined by Justice Ramil, agreed with the court's result in concluding that Barcai's family had suffered no prejudice as a result of the circuit court reversing its initial ruling on the motion in limine, but disagreed with Dr. Betwee's argument that Barcai's family could not rely on the circuit court's initial ruling and that they "should have anticipated its reversal[.]" *Id.* at 488, 50 P.3d at 964 (Acoba, J., concurring). Whereas the majority

---

11. Neuroleptic malignant syndrome (NMS) "is a relatively rare but potentially serious complication of antipsychotic medication that[,] at the time of Barcai's hospitalization, was thought to be fatal in approximately four to twenty[-]nine percent of cases." *Barcai*, 98 Hawai'i at 473, 50 P.3d at 949 (citing Gerard Addonizio & Virginia Lehmann Susman, *Neuroleptic Malignant Syndrome: A Clinical Approach* 7–8, 87–88 (1991)). "Early recognition of NMS and discontinuation of the offending antipsychotic medication is critical; in general, it is thought that the earlier the signs and symptoms of NMS are recognized and the offending medication is stopped, the better

the patient's chances for survival." *Id.* (citing Addonizio & Susman, *supra*, at 52).

12. Barcai's family also alleged false imprisonment, battery, negligent infliction of emotional distress, and negligent failure to obtain informed consent before administering the antipsychotic medication. *Barcai*, 98 Hawai'i at 474, 50 P.3d at 950. The claims against Maui Memorial Hospital were resolved by way of summary judgment and stipulated dismissal by the parties; consequently, Dr. Betwee was the only defendant at trial. *Id.*

opinion focused on the motion in limine only as it was relevant to the fair and impartial jury argument, presumably because that was the scope of the issue raised on appeal, Justice Acoba's concurring opinion explored in more detailed fashion the purposes of motions in limine and the rationales supporting the reasoning that parties should be able to rely on a court's rulings on such motions. He stated:

> [Dr. Betwee]'s approach [in arguing that Barcai's family erred in relying on the trial court's initial in limine ruling] places the responsibility on litigants to second-guess each in limine ruling a trial court makes. In such a setting, the court's order remains subject to question, the precise situation sought to be avoided by obtaining an in limine ruling. If the parties cannot rely on the court's ruling, chaos will result. Inasmuch as parties reasonably expect courts to abide by their decisions on such motions, we should not place the onus on a party to speculate as to whether a particular ruling on a motion in limine will later be reversed by the trial court. For the same reason, we should not engage in a post-trial analysis as to whether such a guess was appropriate or not, as [Dr. Betwee] would apparently invite us to do.

*Id.* "The motion in limine affords an opportunity to the court to rule on the admissibility of evidence in advance," *id.* at 489, 50 P.3d at 965 (quoting *Kuroda v. Kuroda,* 87 Hawai'i 419, 427, 958 P.2d 541, 550 (App.1998)) (internal citations omitted; emphasis removed), and in doing so it "is intended to establish the parameters for the introduction of evidence at trial[,]" *id.* (citing *State v. Gonsalves,* 5 Haw.App. 659, 668, 706 P.2d 1333, 1340 (1985), *overruled on other grounds by State v. Kelekolio,* 74 Haw. 479, 849 P.2d 58 (1993)), and "also assists litigants in formulating their trial strategy." *Id.* (citing *United States v. Yannott,* 42 F.3d 999, 1007 (6th Cir.1994), *cert. denied,* 513 U.S. 1182, 115 S.Ct. 1172, 130 L.Ed.2d 1125 (1995)).

Justice Acoba thus noted that "[a]s a general matter, parties should be able to rely on

a court's in limine rulings." *Id.* Importantly, his concurrence also reaffirmed the logic of the unequivocal ruling exception first adopted by the ICA in *Lussier:* "It follows, then, that a ruling on a motion in limine does not require further objection during trial to preserve an issue for appellate review because the matter had been previously raised, argued, and ruled on[.]" *Id.* at 490, 50 P.3d at 966 (citing *Lussier,* 4 Haw.App. at 393–94, 667 P.2d at 826). When a trial court's ruling on a motion in limine is "unequivocal," it is thereafter "illogical for litigants to have to consider whether or not their reliance on such rulings would be considered reasonable upon appellate review[.]" *Id.* at 491, 50 P.3d at 967.

On the other hand, when the court cannot render an unequivocal pretrial ruling on the admissibility of the particular evidence because it must wait until foundational prerequisites are established at trial or a proper trial record is otherwise first developed, the court should accordingly "refrain from rendering a pretrial ruling and defer such ruling for trial." *Id.* (citing *United States v. Cline,* 188 F.Supp.2d 1287, 1291 (D.Kan.2002) (internal citations omitted); *State v. Dopp,* 129 Idaho 597, 930 P.2d 1039, 1045–46 (Idaho App.1996)). "If the trial court must defer ruling on the motion in limine, its decision should be expressly communicated to the parties and placed on the record." *Id.* at 492, 50 P.3d at 968 (citation omitted).

**B. Under the 2006 amendment to HRE Rule 103, which applies to this case, the Kobashigawas did not waive any objection to the circuit court's admission of evidence and allowance of argument commenting on their motive for filing suit**

**1.** *FRE Rule 103*

Effective December 1, 2000, Federal Rules of Evidence (FRE) Rule 103 was amended to include the following language, and currently[13] reads as follows:

> 103 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes

---

**13.** FRE Rule 103 was again amended in 2011, but only for the purpose of making nonsubstantive stylistic changes. See Fed.R.Evid. 103 advisory committee's note ("The language of Rule

**(b) Not Needing to Renew an Objection or Offer of Proof.** Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

This amendment essentially codified the definitive ruling exception into the FRE and was intended to resolve the circuit split that had existed for many years regarding the issue of whether a contemporaneous objection to evidence proffered during trial is necessary after a court has denied a party's pretrial motion in limine to exclude that same evidence.

Prior to 2000, "the pre-amendment version of FRE 103 did not clearly address the issue of whether, and in what circumstances, an objection raised via motion *in limine* must be renewed at trial to preserve it for appeal." Christopher J. Douglass, *Objections, Renewals, and Preemptive Introductions: Erasing Uncertainty by Revisiting FRE 103*, 86 Iowa L.Rev. 949, 960 (2001). Some circuits had held that a pretrial motion in limine alone was insufficient to preserve an objection for appeal and that a renewal of the objection was always required when the evidence was introduced during trial. *See, e.g., Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980); *Nw. Flyers, Inc. v. Olson Bros. Mfg.*, 679 F.2d 1264, 1275 n. 27 (8th Cir.1982); *Hendrix v. Raybestos–Manhattan, Inc.*, 776 F.2d 1492, 1504 (11th Cir.1985). Other circuits, adopting the definitive ruling exception, held that an objection need not be renewed during trial when the trial court has made an explicit and definitive ruling on a pretrial motion in limine. *See, e.g., Rosenfeld v. Basquiat*, 78 F.3d 84, 90–91 (2d Cir.1996); *Am. Home Assurance Co. v. Sunshine Supermarket, Inc.*, 753 F.2d 321, 324–25 (3d Cir.1985); *Palmerin v. City of Riverside*, 794 F.2d 1409, 1411–13 (9th Cir.1986); *United States v. Mejia–Alarcon*, 995 F.2d 982, 985–88 (10th Cir.1993). As the Advisory Committee on Evidence worked on amending FRE Rule 103 during the 1990s, one circuit even preemptively adopted the Advisory Committee's proposed amendment before it was finalized. *See Wilson v. Williams*, 182 F.3d 562, 565–66 (7th Cir.1999) (en banc).

Under the amended rule, "an objection or offer of proof need not be renewed to preserve a claim of error with respect to a definitive pretrial ruling." Fed.R.Evid. 103 advisory committee's note. This is because "[w]hen the ruling is definitive, a renewed objection or offer of proof at the time the evidence is to be offered is more a formalism than a necessity." *Id.* (citations omitted). "The requirement that the ruling be 'definitive' is clearly satisfied if the trial judge rules in an unequivocal manner, without reserving the matter for further consideration as the trial progresses and the evidence unfolds." Christopher B. Mueller & Laird C. Kirkpatrick, 1 *Federal Evidence* § 1:10 (3d ed.2007). The 2000 amendment thus effectively resolved the circuit split in favor of the courts holding that a pretrial motion in limine seeking exclusion of evidence preserved the moving party's objection without requiring a renewal of the objection during trial so long as the trial court had definitively ruled on the motion. *See, e.g., United States v. Brown*, 669 F.3d 10, 22 n. 18 (1st Cir.2012) (citing Fed.R.Evid. 103(a)) ("The court explicitly denied Elaine's request to exclude Monier's testimony and so Elaine's objection was properly preserved for purposes of appeal."); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 n. 3 (9th Cir.2009) ("The district court was sufficiently informed as to PC Onsite's grounds for objection and denied that motion in a definitive ruling. Therefore, PC Onsite's objection to screen displays that contain unprotectable elements has been preserved for appellate review."); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n. 16 (5th Cir.2002) (citations omitted) ("The 2000 amendment to rule 103(a) changed the law that had prevailed in this circuit. . . . Before the amendment, we required an objection at trial to preserve the error."); *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1062 (9th Cir.2002) (citing Fed.R.Evid. 103(a)(2)) ("Contemporaneous objection is not required where, as here, the trial court

are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility."). As a result of the 2011

amendment, the definitive ruling exception language was moved from FRE Rule 103(a) to FRE Rule 103(b).

definitively ruled on a motion in limine after exploring CSUH's objection.").

## 2. *HRE Rule 103*

A similar split of authority developed and continues to exist among state appellate courts. As with the pre–2000 federal circuit split, state courts also fell on both sides of the question of whether an objection during trial was necessary after a party had unsuccessfully moved to exclude evidence by means of a pretrial motion in limine. Some courts held that a contemporaneous objection was required when evidence was introduced at trial even though the party had filed a pretrial motion in limine seeking to exclude that evidence.[14] Other courts held that a pretrial motion in limine, if fully argued to and definitively ruled upon by the trial judge, was sufficient to preserve for appeal a party's objection to the admission of evidence without further objection during trial.[15]

Following the 2000 amendment to FRE Rule 103, some state legislatures and/or supreme courts moved to add an identical or similar provision to their own rules of evidence.[16] Many of the states in which amendments were made are those that had already substantially or completely modeled their rules of evidence on the FRE. Thus, for example, Pennsylvania Rules of Evidence (Pa.R.E.) Rule 103(a) was amended in 2001 (effective January 1, 2002) to add the same language found in the 2000 amendment to FRE Rule 103(a): "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." [17] Pa. R. Evid. 103(a) & cmt.; *see also Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1232 (Pa.Super.2011) (citing Pa. R. Evid. 103 cmt.; *Trach v. Fellin*, 817 A.2d 1102, 1107 n. 3 (Pa.Super.2003) (en banc)) ("Consistent with the above amendment to Pa.R.E. 103(a),

**14.** *See, e.g., Hartford Accident & Indem. Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963); *Zehner v. Post Oak Oil Co.*, 640 P.2d 991, 995 (Okla. App.1981); *Smith v. Holloway Constr. Co.*, 169 W.Va. 722, 289 S.E.2d 230, 231 (1982); *Maricle v. Spiegel*, 213 Neb. 223, 329 N.W.2d 80, 84–85 (1983) (citing *Twyford v. Weber*, 220 N.W.2d 919 (Iowa 1974); *Vorthman v. Keith E. Myers Enters.*, 296 N.W.2d 772 (Iowa 1980); *Jeffrey F. Ghent, Annotation, Modern status of rules as to use of motion in limine or similar preliminary motion to secure exclusion of prejudicial evidence or reference to prejudicial matters*, 63 A.L.R.3d 311 (1975)); *Douglas v. Lombardino*, 236 Kan. 471, 693 P.2d 1138, 1147 (1985) (citing *Reeve v. McBrearety*, 8 Kan.App.2d 419, 660 P.2d 75, 77 (1983)); *Odom v. Schofield*, 480 So.2d 1217, 1218 (Ala.1985) (citing *Liberty Nat'l Life Ins. Co. v. Beasley*, 466 So.2d 935 (Ala.1985)); *Romanek–Golub & Co. v. Anvan Hotel Corp.*, 168 Ill.App.3d 1031, 119 Ill.Dec. 482, 522 N.E.2d 1341, 1347 (1988); *Simpson v. Smith*, 771 S.W.2d 368, 371 (Mo.App.1989) (citing *Williams v. Enochs*, 742 S.W.2d 165 (Mo.1987); *Anderson v. Rojanasathit*, 714 S.W.2d 894 (Mo.App.1986)).

**15.** *See, e.g., Harley–Davidson Motor Co. v. Daniel*, 244 Ga. 284, 260 S.E.2d 20, 22 (1979); *Davidson v. Beco Corp.*, 112 Idaho 560, 733 P.2d 781, 785 (Idaho App.1986), *rev'd in part on other grounds*, 114 Idaho 107, 753 P.2d 1253 (1987); *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1330–31 (Colo.1986); *Sims v. Gen. Motors Corp.*, 751 P.2d 357, 362–63 (Wyo.1988); *Waterson v. Gen. Motors Corp.*, 111 N.J. 238, 544 A.2d 357, 362–63 (1988); *Beil v. Mayer*, 242 Mont. 204, 789 P.2d 1229, 1232–33 (1990); *Miller v. Peter J. Schmitt & Co.*, 405 Pa.Super. 502, 592 A.2d 1324, 1329

(1991) (citing *Commonwealth v. Gibson*, 363 Pa.Super. 466, 526 A.2d 438, 439 (1987)).

**16.** One notable exception is Kentucky Rules of Evidence (K.R.E.) Rule 103; while based on the FRE, K.R.E. Rule 103 has, since taking effect in 1992, included a separate subsection (d) specifically addressing motions in limine:

> (d) Motions in limine. A party may move the court for a ruling in advance of trial on the admission or exclusion of evidence. The court may rule on such a motion in advance of trial or may defer a decision on admissibility until the evidence is offered at trial. <u>A motion in limine resolved by order of record is sufficient to preserve error for appellate review.</u> Nothing in this rule precludes the court from reconsidering at trial any ruling made on a motion in limine.

Ky. R. Evid. 103(d) (emphasis added).

**17.** On January 17, 2013, the Pennsylvania Supreme Court issued an order rescinding the Pennsylvania Rules of Evidence and replacing it with a restyled version modeled on the nonsubstantive amendments made to the FRE in 2011. *See In re: Rescinding and Replacing the Pennsylvania Rules of Evidence*, No. 586 (Pa. Jan. 17, 2013); *see also supra* note 13 (referencing the 2011 FRE restyling). The restyled version took effect on March 18, 2013. As relevant to this opinion, the language containing the definitive ruling exception moved from Pa.R.E. Rule 103(a) to Pa.R.E. Rule 103(b) and now appears in a form identical to the current FRE Rule 103(b), which is quoted *supra* Part III.A.1.

a motion in *limine* may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion."). Colorado Rules of Evidence Rule 103(a) was amended in 2002 to add the same language found in the 2000 amendment to FRE Rule 103(a). *See* Colo. R. Evid. 103(a); *see also Camp Bird Colo., Inc. v. Bd. of Cnty. Comm'rs*, 215 P.3d 1277, 1289–90 (Colo.App. 2009) ("However, the mining company filed pretrial motions on these issues, and the trial court made definitive rulings on the record prior to trial. Once the trial court makes definitive rulings either at or before trial, the objecting party need not renew the objection contemporaneously during trial to preserve a claim of error on appeal. See CRE 103(a)(2). Thus, the issues were preserved."). Vermont Rules of Evidence Rule 103(a) was amended in 2004 to add the same language from the FRE. *See* Vt. R. Evid. 103(a) & cmt.; *see also State v. Brink*, 183 Vt. 603, 949 A.2d 1069, 1071–72 (2008) (citing Vt. R. Evid. 103 cmt.) ("Under the 2004 amendments, a 'definitive' ruling on admissibility obviates the need for a renewed objection at trial."); *Spooner v. Town of Topsham*, 186 Vt. 527, 973 A.2d 1202, 1204 (2009) (referencing 2004 amendment but concluding that the Town's objection was not preserved for appeal because there was no definitive pretrial ruling and the Town did not renew its objection at trial). South Dakota's version of Rule 103(a), codified at South Dakota Codified Laws (SDCL) § 19-9-3, was amended in 2006 to add the same language from the amended FRE Rule 103(a). See S.D. Codified Laws § 19-9-3; *see also In re Estate of Duebendorfer*, 721 N.W.2d 438, 444 n. 4 (S.D.2006) (recognizing that SDCL § 19-9-3 was amended effective July 1, 2006).

As in the aforementioned states, the HRE is based, in substantial part, on the FRE. See HRE Rule 102 cmt. ("Except for Articles III and V, these rules have as their model the Federal Rules of Evidence[.]"). Moreover, as in the aforementioned states, the Hawai'i Legislature amended HRE Rule 103(a) in 2006 to include language identical to that found in the 2000 FRE Rule 103(a) amendment: "Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." *See* 2006 Haw. Sess. Laws Act 73, § 1 at 129; Addison M. Bowman, *Hawaii Rules of Evidence Manual*, § 103-1[1][B] (2010–2011 ed.) ("The effect [of the 2006 amendment] is to eliminate the need to restate the objection or the proffer in any instance in which the ruling in limine was 'definitive.' "); *see also* HRE Rule 103 cmt. ("This rule is identical with Fed.R.Evid. 103."). Besides aligning HRE Rule 103 with the amended FRE Rule 103, it should be noted that the 2006 amendment also served to confirm the case law of this court and the ICA discussed *supra* in Part III.A that had already recognized the definitive ruling exception. See *Lussier*, 4 Haw.App. at 393–94, 667 P.2d at 826; *Craft*, 78 Hawai'i at 295, 893 P.2d at 146; *Page*, 80 Hawai'i at 208 n. 4, 908 P.2d at 556 n. 4; *Ditto*, 98 Hawai'i at 130 n. 9, 44 P.3d at 281 n. 9; *Barcai*, 98 Hawai'i at 490, 50 P.3d at 966 (Acoba, J., concurring). Thus, as HRE Rule 103 has not been further amended since 2006, the definitive ruling exception remains good law and must be applied when appropriate.[18]

3. *In this case, the trial court made a definitive ruling on the admissibility of evidence regarding speculation on the Kobashigawas' motive in filing suit against the City, thus preserving the issue for appeal*

During the October 5, 2009 pretrial hearing, the circuit court made its rulings on, *inter alia*, the Kobashigawas' Motion in Limine No. 1, seeking exclusion of evidence and argument concerning speculation on the Kobashigawas' motive in filing suit against the City, and No. 4, seeking exclusion of certain parts of Bailey's deposition testimony. With regard to Motion in Limine No. 1, the court first indicated its inclination to deny the mo-

---

18. Although the HRE has not undergone a systematic styling revision as the FRE did in 2011 and the Pennsylvania Rules of Evidence did in 2013, those restylings explicitly made no substantive changes. Thus, although the definitive ruling exception language of HRE Rule 103(a) and FRE Rule 103(b) are not currently stylistically identical, they remain substantively identical.

tion and then allowed the parties to make any further arguments for the record. The following exchange then took place:

MR. PARK[, counsel for the Kobashigawas]: Well, Your Honor, I have to admit I'm surprised you would be denying this because it's established law that the motives of a party in bringing a lawsuit is not really, you know, relevant and it is prejudicial, you know, to admit evidence on that point.

THE COURT: I guess, just so that you can understand where I'm coming from, Mr. Park, while in concept I do tend to agree with you, but the fact of the matter is that bias, interest and motive and credibility of witnesses <u>are always in play</u>. And essentially the [c]ourt's standard instruction 5.1 comes to mind where there's a laundry list of things that the jurors can consider in terms of evaluating the weight and credibility of the witnesses' testimony.

(Emphasis added). When then given the opportunity to speak, the City stated:

MR. LEWALLEN[, deputy corporation counsel]: Your Honor, just briefly, I think the complaint states for itself the evidence they are going to present to the [c]ourt, the plaintiffs will, as they are seeking monetary damages. It's not going to be a secret. And we have also—by the way, they are not seeking equitable relief from the [c]ourt or anything like that. There's one thing that will be asked for, and that's money. That issue is going to be there.

. . .

And once again, it's going to be out there. And this issue is going to be there, whether or not someone is going to harp on it, but it's going to be a factual issue that's presented to the jury and we should be able to address that.

The court ruled on the motion as follows:

THE COURT: Well, to the extent that, you know, from the standpoint that some of the more traditional arguments can be made, obviously, in a case seeking money damages, obviously, it comes up from time to time. Certainly arguments are made as far as the motivations are concerned.

With that, <u>the [c]ourt will confirm its ruling, will deny the motion, does intend to issue a cautionary, which I will provide the parties with copies of what the [c]ourt has sort of drafted</u> and then we can sort of visit this sufficiency or propriety of the way those are drafted at a later point. But basically, the [c]ourt does intend to sort of limit its consideration, any bias, interest or motive, if any is shown.

All right. <u>So with that, that dispenses of plaintiff's number one.</u>

(Emphases added). With regard to Motion in Limine No. 4, through which the Kobashigawas sought to exclude certain statements made by Bailey in her deposition testimony, the circuit court granted in part and denied in part after argument by both parties. The court's ruling on this motion was sufficiently specific as to which statements would be admitted and which would not: "Basically, the only portions that I'm going to sustain and disallow are those portions that I alluded to. The two portions that I addressed with Mr. Park will be permitted. And if I was unclear about that, I apologize."

██ A trial court's ruling on a motion in limine is definitive when it "leaves no question that the challenged evidence will or will not be admitted at trial[.]" *Quad City Bank & Trust v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 90 (Iowa 2011) (citing *State v. Alberts*, 722 N.W.2d 402, 406 (Iowa 2006); *State v. Miller*, 229 N.W.2d 762, 768 (Iowa 1975)). Further, as we have discussed, when a definitive ruling has been made, "counsel need not renew its objection to the evidence at trial to preserve error." *Id.* This is because "[i]n such a situation, the decision on the motion has the effect of [an evidentiary] ruling." *Id.* (citing *State v. Tangie*, 616 N.W.2d 564, 569 (Iowa 2000)) (first brackets added and second brackets in original; internal quotation marks omitted). We also note that "[t]he key to deciding whether the general rule or the [definitive ruling] exception applies in a given case is determining what the trial court purported to do in its ruling." *Id.* (citing *Alberts*, 722 N.W.2d at 406).

██ With these principles in mind, we conclude that the circuit court's rulings on Motion in Limine No. 1 and Motion in Li-

mine No. 4 were definitive and therefore that the Kobashigawas' objections to the admission of the evidence allowed by those rulings were preserved for appeal. There is no need to expound further on the definitiveness of the ruling on Motion in Limine No. 4, as the court specifically ruled that certain statements from Bailey's deposition testimony would be admitted at trial and that certain other statements were excluded. With regard to Motion in Limine No. 1, the circuit court stated in its ruling that "bias, interest[,] and motive ... are always in play." Accordingly, the court neither suggested that the introduction of such evidence would depend on any foundational prerequisites nor invited the Kobashigawas to renew their objection during trial or ask the court to reconsider its ruling. In fact, the definitiveness of the ruling on No. 1 is underlined by the court's statement that it had already drafted a cautionary jury instruction—on its own initiative—on the basis that any evidence on motive would definitely be admitted once offered by the City. Given the foregoing, we emphasize that the court's ruling on No. 1 was a definitive one because the court "did not equivocate or state it would reconsider its ruling at trial." *Quad City,* 804 N.W.2d at 90–91.

We thus contrast the circuit court's rulings on Motion in Limine No. 1 and Motion in Limine No. 4 with its ruling on Motion in Limine No. 2, through which the Kobashigawas had sought to exclude evidence and argument by the City regarding the number of pedestrian injuries or deaths at the midblock crosswalk at issue in this case; such evidence would support the City's argument that William's death was a single, isolated incident. While Motion in Limine No. 2 is not at issue on appeal, we take note of the court's ruling on that motion as an example of a non-definitive ruling issued during the same pretrial hearing:

> THE COURT: All right. This is the [c]ourt's ruling: [c]ourt will respectfully at this point deny the motion and permit the City, subject to appropriate foundation, to introduce evidence, if it has this evidence, regarding indications or lack of indications of other incidents at this crosswalk. And it may not come down to specific numbers,

but certainly I think more generalized type of, I guess, inference can be made basically from the lack of that. It will depend on whether or not you folks are able to establish that foundation.

(Emphases added). The circuit court did not make any such reservations in its rulings on No. 1 and No. 4. Accordingly, by obtaining definitive rulings on these motions, the Kobashigawas did not waive their objection, as articulated in their motions in limine, to evidence or argument speculating on their motive for bringing suit against the City; rather, given that such evidence and argument would unequivocally be admitted during trial, the Kobashigawas were entitled to rely in good faith on the court's rulings in formulating their trial strategy. Accordingly, the objection was preserved, even in the absence of renewed objections at the time such evidence and argument were presented by the City during trial.

4. *In light of the court's unequivocal ruling, the Kobashigawas also did not waive their objection by introducing the adverse evidence themselves*

As a related matter, we note that, under the circumstances of this case, the introduction of Bailey's objected-to deposition testimony by the Kobashigawas themselves in their case-in-chief also did not constitute a waiver of their objection to that evidence. Generally, a party cannot allege an error on appeal premised on evidence introduced into the record by that party. *See, e.g., Carlyle v. Lai,* 783 S.W.2d 925, 931 (Mo.App.1989) (Fenner, J., dissenting) ("There cannot be a finding of prejudice when the information of which appellants complain was already placed before the jury by the appellants themselves."). However, several appellate courts have concluded that when a trial court has denied a party's motion in limine to exclude evidence likely to be introduced by the opposing party at trial, the moving party does not then waive its objection to the adverse evidence by preemptively introducing the evidence itself in its case-in-chief.

In *Beil v. Mayer,* a motor vehicle accident case, Beil had filed a pretrial motion in limine

to exclude evidence of the amount of settlement agreements attained in lawsuits arising from two unrelated accidents, one predating and one postdating the accident at issue. 242 Mont. 204, 789 P.2d 1229, 1231 (1990). The trial court denied the motion with respect to the later settlement and allowed Mayer to introduce evidence of the settlement amount; following denial of the motion, Beil stipulated to a statement of facts concerning the settlement amount and the statement was read to the jury during trial. *Id.* "Beil also voluntarily referred to the settlement in his opening argument and through testimony during his case in chief." *Id.* at 1232. The jury found Mayer not negligent, and the trial court denied Beil's motion for a new trial; on appeal, Beil argued that the trial court erred in admitting the settlement amount on the grounds that it was irrelevant and prejudicial. *Id.* at 1231. Mayer argued that the settlement amount was relevant to the issue of damages and that Beil did not preserve the issue because he failed to renew his objection during trial and stipulated to agreed facts about the settlement. *Id.* at 1231, 1232–33. The Montana Supreme Court agreed with Beil, noting that after his motion in limine regarding the settlement amount was denied,

> he attempted to deal with its imminent introduction in the best way that he could. As a matter of trial tactics, he brought up the settlement during his case in chief, so that he could attempt to minimize its prejudicial impact. He entered into the stipulation in an effort to prevent needless disagreement over known facts which were part of the settlement.

*Id.* at 1233. That court thus held that because the same evidence that Beil sought to exclude was then introduced at trial, Beil's original objection to the evidence was sufficient to preserve the issue for appeal. *Id.*

In *O'Bryan v. Hedgespeth,* also a motor vehicle accident case, O'Bryan had filed a pretrial motion in limine to exclude evidence of collateral source payments he had received; the trial court noted the objection to the evidence but denied the motion. 892 S.W.2d 571, 573 (Ky.1995). Relying on the trial court's ruling, O'Bryan himself introduced evidence of the amounts and sources of benefits he had received; although the jury entered a verdict for O'Bryan, it only awarded him the amount of his out-of-pocket medical expenses and did not make any award for the amount representing the collateral source payments. *Id.* The Kentucky Supreme Court noted in its opinion that "[O'Bryan] elected to go forward with the evidence of collateral source payments in the presentation of [his] case once [his] motion in limine was overruled, rather than to leave it to the defendant to present this evidence." *Id.* at 574. Although Hedgespeth argued that the court should not assume she would have introduced the evidence if O'Bryan did not introduce it himself, the court strongly and sharply disagreed: "The likelihood the defendant would not present this evidence after prevailing against the motion in limine borders on absurdity." *Id.* Accordingly, the court held that "once a motion in limine to exclude evidence has been overruled, a party may go forward with adverse evidence to avoid the appearance of concealment and still 'preserve error for appellate review.'" *Id.* at 575 (quoting Ky. R. Evid. 103(d)).

Most recently, the Florida Supreme Court spoke on this subject in a case decided to resolve a split in the Florida district courts of appeal. In *Sheffield v. Superior Insurance Co.,* also a motor vehicle accident case, Sheffield settled with the tortfeasor and then filed suit against Superior, her uninsured motor insurance carrier. 800 So.2d 197, 199 (Fla. 2001). As in *O'Bryan,* Sheffield filed a pretrial motion in limine "seeking to exclude collateral source evidence regarding both insurance and other benefits provided by her employer." *Id.* After the trial court denied the motion, the parties "stipulated that Sheffield would have a standing objection to the introduction of collateral source evidence and would not have to contemporaneously or spontaneously object during trial in order to preserve the objection for appeal."[19] *Id.*

---

19. *Sheffield* was decided in 2001 and therefore predated the 2003 amendment to Florida's version of FRE Rule 103, codified at Fla. Stat. Ann. § 90.104, incorporating the definitive ruling exception. *See In re Amendments to the Florida Evidence Code–Section 90.104,* 914 So.2d 940,

Sheffield then "introduced collateral source evidence in her case-in-chief, including the fact that she had group medical insurance to defray some of the costs of treatment." *Id.* Also as in *O'Bryan*, the jury returned a verdict for Sheffield but less than what she had sought; the trial court also denied her motion for a new trial on the issue of damages. *Id.* On appeal, the First District Court of Appeal affirmed by a vote of 2–1, concluding that while the trial court erred in denying Sheffield's motion in limine, "her own introduction of such collateral source evidence precludes reversal for a new trial on that ground." *Id.* (quoting *Sheffield v. Superior Ins. Co.*, 741 So.2d 533, 534 (Fla.App.1999)) (brackets and internal quotation marks omitted). Judge Browning dissented, stating that "because Sheffield was faced with the trial court's incorrect ruling, Sheffield had every right to attempt to defuse the issue and initially present collateral-source evidence." *Id.* at 200 (quoting *Sheffield*, 741 So.2d at 540 (Browning, J., dissenting)). On further appeal, the Florida Supreme Court agreed with the First District majority that the trial court erred in denying Sheffield's motion in limine and allowing evidence of collateral sources; the question thus became "whether Sheffield's counsel, by introducing collateral source evidence in Sheffield's case-in-chief after the trial court erroneously denied her motion in limine, waived any objection for appellate review." *Id.* at 200–01. In trying to reconcile the different approaches taken in different district courts of appeal, as well as by itself in a prior case, the Florida Supreme Court agreed with the general principles that a party should not be penalized for relying in good faith on a trial court's incorrect ruling and that introduction of evidence adverse to a party does not waive that party's objection to the evidence in light of the trial court's previous denial of a motion in limine to exclude. See *id.* at 201–02. The court concluded that the concept of invited error—and thus waiver of any objection—does not apply where the trial court makes an adverse, unequivocal evidentiary ruling

that then forces a party to preemptively introduce the evidence as a matter of trial strategy to minimize its prejudicial impact. *Id.* at 202; *see also Chenoweth v. Kemp*, 396 So.2d 1122, 1127 (Fla.1981) (Sundberg, C.J., dissenting) (quoted in *Sheffield*, 800 So.2d at 202) ("In light of this ruling, appellant had every right, and indeed had no choice, but to comment upon the evidence in an attempt to mitigate the damage soon to be done by the erroneous inclusion of the written finding. Trial court error, not tactics, dictated appellant's actions."). In quashing the First District's judgment and remanding the case for a new trial, the court thus held: "once a trial court makes an unequivocal ruling admitting evidence over a movant's motion in limine, the movant's subsequent introduction of that evidence does not constitute a waiver of the error for appellate review." *Id.* at 203.

▬ In this case, the circuit court made an unequivocal ruling that evidence adverse to the Kobashigawas would be admitted at trial. Faced with the inevitability that the City would introduce Bailey's deposition testimony to support its theory of the Kobashigawas' motive for filing suit, the Kobashigawas introduced the testimony themselves as a matter of trial strategy, aiming to minimize the prejudice that would result from admission of the evidence. By introducing the evidence themselves, the Kobashigawas sought to avoid putting themselves in a position where they would have to object in front of the jury after its introduction and each reference to it thereafter by the City. The Kobashigawas made these very arguments to the ICA, and although the ICA did not comment on them in its opinion, we agree with the Kobashigawas and the courts cited *supra* that have addressed this issue. In particular, we adopt the holding from *Sheffield* that once a trial court makes an unequivocal ruling admitting evidence over a party's motion in limine to exclude, that party's subsequent introduction of the evidence does not constitute a waiver of its objection for appellate review.

941 (Fla.2005) (noting the amendment as passed by the Florida Legislature in 2003 and adopting the amended rule "to the extent that it is procedural"). Nevertheless, because the parties stip-

ulated that a contemporaneous objection was unnecessary for purposes of preserving the objection on appeal, the analysis in Sheffield remains valid under the amended section 90.104.

For all of the foregoing reasons, the Kobashigawas preserved their objection to admission of any evidence and argument speculating on their motive for filing suit despite the denial of their pretrial motions in limine and their subsequent self-introduction of the adverse evidence. The ICA, therefore, did not need to resort to plain error review to reach the merits of the error alleged by the Kobashigawas on appeal. We now turn to the merits.

### C. The ICA did not err in concluding that the errors occurring during trial warranted remanding the case for a new trial

1. *The ICA did not err in holding that the circuit court's cautionary jury instruction was an erroneous statement of the law*

In its application to this court, the City first argues that the ICA gravely erred in concluding that the circuit court's cautionary jury instruction on bias, interest, or motive constituted an erroneous statement of the law because, according to HRE Rule 609.1, evidence pertaining to a witness's bias, interest, or motive is always admissible.

HRE Rule 609.1 states, in full:

(a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.

(b) Extrinsic evidence of bias, interest, or motive. Extrinsic evidence of a witness' bias, interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is afforded an opportunity to explain or deny the matter.

This rule is often invoked in the context of criminal cases; as this court has stated, "[b]ias, interest, or motive is always relevant under HRE Rule 609.1. So long as a proper foundation is laid, bias can be raised at any time by the witness's testimony or other evidence." *State v. Estrada*, 69 Haw. 204, 220, 738 P.2d 812, 823 (1987) (citing *State v.*

*Murphy*, 59 Haw. 1, 575 P.2d 448 (1978)). Of course, the rule also applies to witnesses in civil cases: for example, the ICA cited to the rule in *Coyle v. Compton*, 85 Hawai'i 197, 210, 940 P.2d 404, 417 (App.1997), and *Cenal v. Ragunton*, 106 Hawai'i 298, 304, 104 P.3d 336, 342 (App.2004). (In both of those cases, however, the evidence that would have been used to impeach the witnesses was ultimately excluded under HRE Rule 403[20] as being more prejudicial than probative.)

■ The circuit court was therefore correct only insofar as it stated, by quoting Rule 609.1, that the credibility of a witness may be attacked by evidence of bias, interest, or motive, and that such evidence pertaining to a witness's credibility is always relevant and admissible at trial. The circuit court erred, however, in ruling that such evidence could be used by the jury in considering the Kobashigawas' motives *as plaintiffs* in filing the present lawsuit.

As the Kobashigawas argued and the ICA recognized, it is a long-standing principle of law that a plaintiff's motive in filing a lawsuit is otherwise immaterial to resolving the merits of the dispute. *Kobashigawa*, 126 Hawai'i at 65, 266 P.3d at 473; *see also Dickerman v. N. Trust Co.*, 176 U.S. 181, 190, 20 S.Ct. 311, 44 L.Ed. 423 (1900) ("If the law concerned itself with the motives of parties new complications would be introduced into suits which might seriously obscure their real merits."); *Carter v. Ah So*, 12 Haw. 291, 302 (1899) ("So far as the law is concerned, if the plaintiff has made out a case on the facts, it is immaterial what [the] motive was."); *Lucas v. American–Hawaiian Eng'g & Constr. Co.*, 16 Haw. 80, 85–86 (1904) ("[T]he weight of authority is that the motives of a taxpayer in bringing a suit can not be inquired into if he has shown that he has the other qualifications to sue.... That motives can not be inquired into is well settled."); *Karim v. Gunn*, 999 A.2d 888, 890 (D.C.2010) (internal quotation marks and citation omitted) ("The motive of a party in bringing an action generally is immaterial to the question whether the

---

**20.** HRE Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

action may be maintained."); *Somers v. AAA Temp. Servs.*, 5 Ill.App.3d 931, 284 N.E.2d 462, 465 (1972) ("It is generally accepted that where the plaintiff asserts a valid cause of action, [the plaintiff's] motive in bringing the action is immaterial.").

▮ The City argues to this court that the cases cited by the ICA and the Kobashigawas, and mentioned immediately *supra*, are inapposite because they do not address the issue of "whether evidence pertaining to a plaintiff's motive for filing suit may be properly considered for the purposes of assessing a witness' credibility." In framing the issue in such a manner, however, it appears that the City confuses, as it also did in the trial court and before the ICA, motive evidence permissible under Rule 609.1 to impeach the credibility of a witness with evidence of the plaintiff's motive for filing suit, which, as discussed, is irrelevant and thus inadmissible. Under Rule 609.1, "[t]he credibility of a witness may be attacked by evidence of bias, interest, or motive" of that witness. A plain reading of the rule does not suggest that testimony of a witness, even a disinterested one such as Bailey here, may somehow be used to suggest that the Kobashigawas had an improper motive in filing suit. Looking beyond the rule, there is also no other authority for the proposition that, pursuant to Rule 609.1, the testimony of a witness may be used to question the bias, interest, or motive of the plaintiff bringing the suit.

▮ Thus, based on well-established and long-standing precedent, a plaintiff's motive in filing a lawsuit is irrelevant provided that the plaintiff has established a valid cause of action, and we agree with the ICA that the circuit court erred here in instructing the jury to consider certain evidence for that purpose even though the instruction was given as a cautionary, limiting one.

2. *The ICA did not err in concluding that the circuit court erred in allowing the City to comment on motive during its closing argument*

▮ The City also argues in its application that the ICA erred by concluding that the circuit court erred in allowing the City to comment on the Kobashigawas' motive during its closing argument. Rather, the City contends that nothing in its closing argument was improper because it simply commented on evidence that had been properly admitted by the circuit court during trial. As quoted *supra* in Part I.B, the City made two separate references in its closing argument to Bailey's testimony and the issue of the Kobashigawas' monetary motive in filing suit against the City. Because the Kobashigawas' motive in filing suit was never relevant to the City's liability under a negligence theory, the City should not have been allowed to reference it, in closing or at any other time. As we have thoroughly discussed, the circuit court's ruling to admit evidence and allow argument on motive was in error, and its cautionary instruction given to the jury contained an erroneous statement of the law. As the ICA noted, "erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." *Kobashigawa*, 126 Hawai'i at 66, 266 P.3d at 474 (quoting *Nelson*, 97 Hawai'i at 386, 38 P.3d at 105) (internal quotation marks and brackets omitted). In examining the record as a whole, including the motions in limine, the trial proceedings, the erroneous instruction, and the City's closing argument, it does appear that the error was prejudicial to the Kobashigawas, and we agree with the following conclusion in the ICA's opinion:

> Because an improper jury instruction requires the error to be read in light of the record as a whole and [the] City's closing argument added to the harm caused by the circuit court's erroneous jury instruction, the circuit court erred in allowing [the] City to comment in its closing argument on the Kobashigawas' motives.

*Id.* at 66–67, 266 P.3d at 474–75; *see also Kakligian v. Henry Ford Hosp.*, 48 Mich. App. 325, 210 N.W.2d 463, 465 (1973) (quoted in *Kobashigawa*, 126 Hawai'i at 66, 266 P.3d at 474) (noting that "in conjunction with the lower court's failure to properly instruct the jury, a defense counsel's reference to the plaintiff's motive in bringing suit was grounds for a new trial").

Thus, the ICA did not err in concluding that the circuit court erred in allowing the City to comment during its closing argument about the Kobashigawas' motive for filing suit. Because the closing argument added to and was intertwined with the harm introduced by the court's erroneous jury instruction on motive, we cannot say that the ICA erred in vacating the circuit court's judgment on this additional ground.

## IV. CONCLUSION

Accordingly, subject to the foregoing discussion modifying the ICA's December 2, 2011 published opinion, we affirm the ICA's December 22, 2011 judgment vacating the Judgment Pursuant to Special Verdict filed in circuit court on March 25, 2010 and remanding this case for a new trial.