Electronically Filed
Supreme Court
SCWC-18-0000505
17-MAR-2021
08:53 AM
Dkt. 16 OPA

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs

BENITO MARROQUIN, III aka BENNY MARROQUIN,
Petitioner/Defendant-Appellant.

SCWC-18-0000505

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000505; CR. NO. 3PC16100117K

MARCH 17, 2021

RECKTENWALD, C.J., NAKAYAMA, AND McKENNA, JJ.,
AND WILSON J., DISSENTING[1]

OPINION OF THE COURT BY NAKAYAMA, J.

Petitioner/Defendant-Appellant Benito Marroquin III

(Marroquin) appeals the judgment of the Intermediate Court of

---

[1] Associate Justice Richard W. Pollack, who was a member of the court when the oral argument was held, retired from the bench on June 30, 2020.

Appeals (ICA) affirming the Circuit Court of the Third Circuit's[2] (circuit court) denial of two of Marroquin's motions in limine to offer hearsay evidence.  On certiorari, Marroquin raises a single point of error and argues that the ICA erred by concluding that the circuit court may deny a motion in limine without providing findings of fact on the record, contrary to Hawai'i Rules of Penal Procedure (HRPP) Rule 12(e).  In particular, Marroquin challenges the ICA's conclusion that trial judges "should," but need not, make findings of fact on the record when resolving motions in limine.

Contrary to Marroquin's argument, HRPP Rule 12(e) does not govern motions in limine.  Rather, Hawai'i Rules of Evidence (HRE) Rule 103(b) is the specific standard governing the admissibility of evidence and the motions in limine.  HRE Rule 103(b) explicitly provides discretion to trial courts resolving evidentiary issues regarding whether to make findings of fact.  Therefore, we agree with the ICA's ultimate conclusion that the circuit court did not err in denying Marroquin's motions in limine without entering findings of fact on the record.  We consequently affirm the ICA's August 9, 2019 Judgment on Appeal on different grounds.

---

[2]     The Honorable Ronald Ibarra presided.

## I.  BACKGROUND

### A.  Factual Background

On January 13, 2016, Marroquin was involved in an altercation with the complaining witness (the CW) at a construction site.  During the altercation, Marroquin punched the CW in the face at least three to five times.  Marroquin's punches rendered the CW unconscious, "caved in" the CW's right cheek, caused brain injury, and required facial reconstruction surgery to install four plates and twenty screws.  Marroquin claimed that he punched the CW in self-defense because the CW grabbed Marroquin by the neck during the altercation.

### B.  Pre-Trial Proceedings

Marroquin filed two motions in limine relevant to certiorari.

Marroquin's Third Motion in Limine (Third MIL) requested permission to offer a hearsay statement from an eyewitness through the testimony of Officer Scott Aloy (Officer Aloy).[3]  In particular, Marroquin sought to offer testimony reflecting Officer Aloy's notes that the eyewitness

> saw two guys arguing at which point he stated that he saw the guy dressed in the tank top[4] swing at the other guy.  He stated that the haole guy put his hands around the neck of

---

[3]    Officer Aloy responded to a call regarding the altercation.

[4]    Marroquin testified that he wore a tank top on the day of the altercation.

3

>the guy with the tank top and at that time, he stated that he just saw the guy in the tank top keep punching the other guy in the face. He then stated that the haole guy was then stuck in the corner and the guy in the tank top kept punching him while he was on the ground at which point I asked him which party swung first. He stated that the guy in the tank top swung first and that he seemed to be the aggressor in this situation.

Marroquin asserted that the eyewitness's statement was relevant to his self-defense claim and admissible under HRE Rule 804(b)(8).

Marroquin's Amended Fourth Motion in Limine (Fourth MIL) requested permission to offer hearsay-within-hearsay statements made by the CW to a co-worker through the testimony of Investigator Daniel Pang (Investigator Pang).[5] Specifically, Marroquin sought to offer testimony reflecting (1) Investigator Pang's notes that the CW told the co-worker that the CW "wasn't going to take that from a punk like [Marroquin] and that [the CW] was going to call [Marroquin] out on it[;]" and (2) a follow-up email from the co-worker to Investigator Pang stating:

>On January 13th of this year I showed up for work at the . . . residence. I was talking with [Marroquin] around 8

---

[5] Investigator Pang conducted follow-up investigations regarding the altercation.

Marroquin's Fourth MIL also indicated that he intended to introduce the CW's statements to the co-worker through another witness's testimony. However, Marroquin's motion focused solely on why he should be allowed to introduce the CW's statements to the co-worker through Investigator Pang's testimony. This court "need not consider a point that was not presented in the trial court in an appropriate manner." Hawai'i Revised Statutes (HRS) § 641-2(b) (2004). Inasmuch as Marroquin now argues that the ICA erred in affirming the circuit court's decision to not admit the CW's statements to the co-worker through another witness's testimony, this court will disregard such a claim. See id.

4

> am and [the CW] came over to ask a question. [Marroquin] gave him a sarcastic answer and [the CW] walked away angry. I went over to check and see if [the CW] needed anything 10 minutes later and [the CW] was still upset and said he wasn't going to take that from a punk like [Marroquin]. [The CW] said he was going to call [Marroquin] out on it. I walked away and started working on what I was supposed to be doing that day and didn't think much of it until 20 minutes later when [Marroquin] came over to where [I] was working and said [the CW] grabbed [Marroquin] by the throat so [Marroquin] hit [the CW]. I didn't see the altercation.

Marroquin asserted that the CW's statement to the co-worker was relevant to his self-defense claim as it showed the CW's state of mind, and admissible under HRE Rule 804(b)(8).

The circuit court denied Marroquin's Third and Fourth MILs. In the circuit court's written orders, the circuit court stated:

> The Court having considered the Motion; the State's Opposition to Defendant's Motion; the oral arguments of counsel; and the record and case-file herein shall DENY the Motion.

## C. Trial Proceedings

During the trial, the CW testified that prior to the altercation, Marroquin responded to a question with an "aggressive" tone. The CW explained that after this incident, "I was mad, you know, that I just got chewed out for nothing." The CW added that "I vent[ed] to get it off my chest and move[d] on." About thirty or forty minutes later, the CW encountered Marroquin while looking for a drill. The CW testified that Marroquin said "that he ought to just slap me" in an "elevated and . . . very aggressive tone." According to the CW, Marroquin

5

struck him in the face and punched him multiple times, causing him to lose consciousness shortly after making the statement. The CW also stated that the CW "had a thought that if I could just grab him and hold onto him in a bear hug I could stop the madness. But I never accomplished that. Next thing I remember, I was on the ground."

On cross-examination, defense counsel asked the CW about the prior incident. The CW reinforced that Marroquin's tone was "[a]ggressive and demeaning." The CW also stated that "[w]ithin 30 seconds" of the interaction, "I stated my frustrations and I moved on." When asked why he was upset by the interaction, the CW responded "[t]he level and the -- the inflection. It was aggressive, it was demeaning. It's like he was talking down to me." Turning to the altercation itself, defense counsel asked the CW if "[a]t any point did you grab [Marroquin] by the neck?" The CW replied "No." When asked if the CW tried to grab Marroquin during the altercation, the CW explained "I remember a thought of trying to grab him. I remember trying to keep my balance and flailing my arms, and the next thing I remember I was on the ground."

On re-direct, the CW added that "I have no memory of laying my hands on [Marroquin] at all."

After the prosecution rested, defense counsel renewed its Third MIL to introduce the eyewitness's statement without providing any new evidence or arguments.  The circuit court denied the renewed motion, explaining "there's still nothing new that -- for the Court to consider."

During the defense's case-in-chief, Marroquin also testified about the altercation.  Marroquin stated that the CW initiated the altercation by telling him "You shouldn't be effin moving the drill.  I should slap you."  Marroquin explained that the CW then "goes to make a motion.  I go to put up my hands.  I trip off the back of the lanai and he has me up against the wall by my neck."  Marroquin emphasized that the CW "had me up against the wall by my neck and choking me out."  Marroquin then testified that "I hit him.  He went down.  I got him off me.  I was like feared [sic] for my life.  He -- like had me, you know.  He had me up by my throat on the wall and I couldn't move."  Marroquin explained that after he managed to break free, "I made sure that he was down and didn't get back up to attack me."

A jury subsequently found Marroquin guilty of Assault in the Second Degree[6] on September 27, 2016.  The circuit court

---

[6]     The jury convicted Marroquin of violating HRS § 707-711(1) (2016), which provided in relevant part:

> Assault in the second degree. (1) A person commits the offense of assault in the second degree if:

(continued . . . )

7

entered its Judgment of Conviction and Sentence on April 24, 2018.

## D.   The ICA's Summary Disposition Order

Marroquin appealed the circuit court's Judgment of Conviction and Sentence to the ICA, which affirmed the circuit court.  The ICA concluded in a summary disposition order that a trial court "should," but need not, provide factual findings in determining the admissibility of evidence.

## II.   STANDARD OF REVIEW

## A.   Motions in Limine

"The granting or denying of a motion in limine is reviewed for abuse of discretion."  Kobashigawa v. Silva, 129 Hawaiʻi 313, 320, 300 P.3d 579, 586 (2013).  "An abuse of discretion occurs 'where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'"  Carr v. Strode, 79 Hawaiʻi 475, 488, 904 P.2d 489, 503 (1995)

---

(continued . . .)

> (a)  The person intentionally, knowingly, or recklessly causes substantial bodily injury to another;
>
> (b)  The person recklessly causes serious bodily injury to another[.]

8

(quoting <u>Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 74 Haw. 85, 114, 839 P.2d 10, 26 (1992)).

### III.  DISCUSSION

**A.   HRPP Rule 12(e) does not govern the motions in limine at issue.**

Marroquin contends that HRPP Rule 12(e)[7] governs the motions in limine here because he filed the motions before trial and the trial court's determination on admissibility of hearsay evidence necessarily involved factual issues.

This court disagrees.  HRE Rule 103(b), the specific rule governing admission of evidence, conflicts with HRPP Rule 12(e), a general rule governing pretrial motions, and therefore precludes its application to motions in limine.

The HRE govern the resolution of these motions in limine.  This court has approvingly quoted the ICA's explanation that a motion in limine "serves the useful purpose of raising and pointing out before trial certain evidentiary rulings the court may be called upon to make during the course of the

---

[7]     HRPP Rule 12(e) (2007) provides:

> (e) <u>Ruling on Motion</u>.  A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial.  Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

9

trial." Kobashigawa, 129 Hawaiʻi at 321, 300 P.3d at 587 (quoting Lussier v. Mau-Van Dev., Inc., 4 Haw. App. 359, 393, 667 P.2d 804, 826 (1983)). Given that motions in limine involve evidentiary issues, resolution of a motion in limine necessarily calls upon the trial court to apply the HRE.

HRE Rule 103(b) (1980) authorizes trial courts to resolve motions in limine without providing factual findings. "[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." Citizens Against Reckless Dev. v. Zoning Bd. of Appeals, 114 Hawaiʻi 184, 193, 159 P.3d 143, 152 (2007) (internal citation omitted). HRE Rule 103(b) provides in relevant part: "[t]he [trial] court may add any other or further statement which shows the character of . . . the ruling thereon." (Emphasis added.) The commentary to HRE Rule 103(b) adds that "[t]he intent [of HRE Rule 103(b)] is to provide the appellate court with a record adequate for final disposition of an evidentiary point. The provision is discretionary rather than mandatory, leaving determination of adequacy of record to the judgment of the trial court." The plain text of HRE Rule 103(b) consequently establishes that a trial court may provide findings of fact when resolving a motion in limine.

10

HRPP Rule 12(e)'s factual finding requirement conflicts with HRE Rule 103(b)'s grant of discretionary authority.  The text of HRPP Rule 12(e) unambiguously requires that "[w]here factual issues are involved in determining a motion, the [trial] court shall state its essential findings on the record."  (Emphasis added.)  However, HRE Rule 103(b) does not impose a strict mandate requiring trial courts to provide findings of fact to resolve a motion in limine.  Application of HRPP Rule 12(e) to motions in limine would consequently deprive trial courts of the discretion granted by HRE Rule 103(b), and is therefore inconsistent with HRE Rule 103(b).

HRE Rule 103(b) governs these motions in limine.  The Legislature enacted the HRE in 1980, HRS § 626-1 (1980), and concurrently enacted HRS § 626-3 (1980), which provides that "[i]f any other provision of law, including any rule promulgated by the supreme court, is inconsistent with [the HRE], [the HRE] shall govern unless [the HRE] or such inconsistent provision of law specifically provides otherwise."

Neither the HRE nor the HRPP provides that the HRPP governs instead of the HRE.  HRE Rule 1101 (1980) governs the applicability of the HRE.  HRE Rule 1101(b) explicitly provides that the HRE "apply generally to civil and criminal

11

proceedings." HRE Rule 1101(d) adds in relevant part that the HRE do not apply to:

> (1) Preliminary questions of fact. The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104.

> (2) Grand jury. Proceedings before grand juries.

> (3) Miscellaneous proceedings. Proceedings for extradition or rendition; preliminary hearings in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

> (4) Small claims. Proceedings before the small claims division of the district courts.

Meanwhile, the HRPP is silent at best on the issue of whether the HRPP or the HRE governs in case of a conflict. HRPP Rule 1(b) (2012) governs the "Interpretation and Enforcement of [the HRPP]." The rule provides that

> [t]hese rules shall be read and construed with reference to each other, the Hawaiʻi Electronic Filing and Service Rules, and the Hawaiʻi Court Records Rules. In any conflict amongst the Hawaiʻi Rules of Penal Procedure, the Hawaiʻi Court Records Rules, and the Hawaiʻi Electronic Filing and Service Rules, the Hawaiʻi Electronic Filing and Service Rules shall prevail.

HRPP Rule 1(b).

This court therefore holds that HRE Rule 103(b), and not HRPP Rule 12(e), governs these motions in limine. See HRS § 626-3. HRPP Rule 12(e)'s factual finding requirements therefore do not apply to the resolution of motions in limine.

12

## IV.  CONCLUSION

For the foregoing reasons, we affirm the ICA's

August 9, 2019 Judgment on Appeal affirming the circuit court's

Judgment of Conviction and Sentence.

| | |
|---|---|
| Victor M. Cox<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Charles E. Murray, III,<br>Deputy Prosecuting Attorney,<br>for respondent | /s/ Sabrina S. McKenna |

