**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000728
26-OCT-2021
08:19 AM
Dkt. 78 SO**

NO. CAAP-20-0000728

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF LC, AC, IC, AND DG

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-S NOS. 20-1-0022, 20-1-0023, 20-1-0024 and 20-1-0025 )

SUMMARY DISPOSITION ORDER
(By:  Hiraoka, Presiding Judge, Nakasone and McCullen, JJ.)

Appellant Mother (**Mother**) appeals from the Order Establishing Jurisdiction, Revoking Temporary Foster Custody, Granting Foster Custody, filed on November 4, 2020, in FC-S Nos. 20-1-0022, 20-1-0023, 20-1-0024, and 20-1-0025, by the Family Court of the Second Circuit (**Family Court**).[1]  The Family Court awarded Petitioner-Appellee the State of Hawaiʻi, Department of Human Services (**DHS**) foster custody of Mother's children, LC, AC, IC, and DG (collectively **Children**).[2]  On February 12, 2021, the Family Court filed its Written Findings of Fact, Conclusions of Law, Decisions and Orders Following Contested Jurisdictional Evidentiary Hearing on October 30, 2020 (**FOFs and COLs**).

On appeal, Mother contends she was denied due process of law, and the Family Court erred by:  (1) not granting Mother's March 10, 2020 oral motion for an order that the DHS provide

---

[1]    The Honorable Adrianne N. Heely presided.

[2]    At the time of this proceeding, LC was 14 years old, AC was 11 years old, IC was 7 years old, and DG was a 4-month-old infant.

police reports it had regarding the case and regarding testing of alleged drug paraphernalia found in Mother's residence; and denying her motion to strike allegations in the DHS's temporary custody petition and Safe Family Home Report that accused Mother of having a drug pipe, baggies with drug residue, or drug paraphernalia because the DHS did not have any testing that would result in a finding of methamphetamine; (2) denying Mother's Motion in Limine (**MIL**)/Motion to Dismiss (**MTD**) where the DHS "failed to conduct any independent investigation" into reports of concern discussed at a February 5, 2020 meeting at the Ka Hale A Ke Ola Homeless Resource Center (**KHAKO shelter**); and removal of the Children shortly thereafter because there was no non-hearsay evidence of drug use, any evidence that drugs were found, or that items characterized as drug paraphernalia were shown to be drug items; and where the DHS failed to provide legible discovery of police reports in its possession that the DHS referred to and relied upon to support the allegations set forth in its petition and Safe Family Home Reports; (3) establishing jurisdiction and awarding foster custody to the DHS because the DHS failed to properly investigate before removing the Children, relied upon hearsay and uninvestigated KHAKO shelter reports, and failed to provide Mother with fair and meaningful access to police reports in the DHS's possession which the DHS relied upon to remove the Children and assert jurisdiction.[3]  Mother challenges the Family Court's entry of Findings of Fact (**FOF**) 10, 23, 27-28, 30, 32, 34, and 35,[4] as clearly erroneous; and Mother also argues that Conclusions of Law (**COL**) 3-5, and Orders 2 and 3, were wrong.[5]

---

[3]     In the discussion <u>infra</u>, we have reorganized and consolidated Mother's points of error for clarity.

[4]     Because several FOFs are misnumbered or use duplicate numbers, the FOFs have been renumbered to align with Mother's points of error and arguments in her Opening Brief.

[5]     Mother challenges the following FOFs, COLs, and Orders:

**FINDINGS OF FACT**

(continued...)

[5](...continued)

. . . .

10.      Upon completion of its investigation, on February 10, 2020 DHS filed a Petition for Temporary Foster Custody for the children.

. . . .

23.      On February 4, 2020, DHS Social Worker Leslie Armstrong was a social worker and supervisor with the Maui DHS/CWS and on that day SW Armstrong received an email from Ka Hale A Ke Ola ("KHAKO") Executive Director Monique Yamashita ("Yamashita") seeking a meeting at KAAKO [sic] conference room for February 5, 2020 because there were concerns about [Mother] ("Mother") and Mother's four children residing at KHAKO after KHAKO tenants have reported using drugs with Mother and the number of Notices of Concerns provided to Mother and Mother failing to adhere to KHAKO's requests to take corrective action.

. . . .

27.      DHS Social Worker and Mother also testified that KHAKO staff claimed that the search of Mother's unit on February 3, 2020 resulting in the finding of a small glass pipe and two small empty melted plastic bags Mother found in her back room with the notes from the guest she invited in; testimony was also received that no larger plastic bag one-third full of methamphetamine which the other unidentified tenant alleged was in Mother's unit was found in Mother's unit.

28.      DHS Social Worker testified that she requested of Mother to take a urinalysis to avoid removal of her children; and Mother refused.

. . . .

[30].      Under the circumstances presented by the instant case, the DHS has exerted reasonable and active efforts to avoid foster placement of the Children.

. . . .

[32].      None of the underlying facts and data upon which the DHS based its opinions, assessments and recommendations were shown to be untrustworthy. The DHS investigations and continuing assessment in the instant case were conducted in an appropriate manner, and pursuant to [Hawaii Revised Statutes (**HRS**)] Chapter 578A [sic], H.R.S. §587A-2; 587A-7; 587A-4, 587A-5; 587A-8; and 587A-11.

. . . .

[34].      Prior to placement of the Children out of the

(continued...)

3

---

[5](...continued)
family home, the DHS made reasonable efforts to prevent or eliminate the need to remove the Children from the Children's family.

[35].     It is contrary to the immediate welfare of the Children to remain in the family home.

. . . .

**CONCLUSIONS OF LAW**

. . . .

3.     The Children's physical or psychological health or welfare have been harmed or are subject to threatened harm by the acts or omissions of the Children's Mother.

4.     Mother is not willing and able to provide the Children with a safe family home even with the assistance of a service plan.

5.     Pursuant to the Hawaii Revised Statutes section 587A-28/587A-5 and the reports submitted pursuant the [sic] Hawaii Revised Statutes 587A-7 and 587A-18 and the record therein, there is an adequate basis to sustain the petition in that the Children whose physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions of the child's family; to wit the threat of neglect.

. . . .

**ORDERS**

. . . .

2.     The court further orders that the Petition for Temporary Foster Custody filed herein on February 10, 2020 is granted, finding that the Department has met its burden of establishing jurisdiction; thereby the court revokes temporary foster custody; sets a Return with Service Plan hearing; and

3.     Further finding pursuant to H.R.S. §587A-28/587A-5 and the report(s) submitted pursuant to H.R.S. § 587A-7 and 587A-18 and the records therein, there is an adequate basis to sustain the Petition in that the children are in children [sic] whose physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts and omissions of the child's family, specifically Mother on the basis of Mother's Neglect; and father has not participated in this case and this court has not received evidence of any of the child/ren's father's providing a safe family home environment for the children.

(continued...)

4

Upon careful review of the record and the briefs submitted by the parties[6] and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's contentions as follows, and affirm.

The pertinent background is as follows. On February 5, 2020, the DHS received reports of allegations of Mother smoking crystal methamphetamine in her unit at the KHAKO shelter with her children present, and that the living conditions within Mother's unit were dangerous and a likely fire hazard. DHS Social Worker Leslie Armstrong (**Armstrong**) attended a meeting at the KHAKO shelter with KHAKO staff, and was shown pictures of Mother's unit and heard concerns regarding the safety and welfare of Mother's children, including the unit's lack of cleanliness and posing a fire hazard; drug usage and paraphernalia in the unit; piles of clothing and trash throughout the unit; the baby's car seat against the wall on a bed so the baby would not fall off the bed while sleeping; and Mother's violation of house rules including noncompliance with curfew, having uninvited guests, and reports of drug selling and drug use activity in and around Mother's unit.

That same day, February 5, 2020, the DHS called Maui Police Department (**MPD**) police for assistance with taking protective custody of the Children and placing them in the DHS's protective custody, pursuant to HRS § 587A-11(1) (2018). Mother attempted to impede their entrance, screaming and yelling, resulting in the police having to restrain and handcuff Mother to obtain entry. When Armstrong entered the home, she saw dishes piled up in the kitchen, trash scattered all over the floor, the crib completely filled with belongings, and no clean space for

---

[5](...continued)
(Footnotes omitted).

[6]    Mother's Counsel is cautioned to adhere to the font requirements of Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 32(b), which requires that footnotes use the same font size as the text, *i.e.*, 12-point font. The Opening Brief did not comply with this requirement.

the Children to sleep.[7]  After completing its investigation and removal of the Children, on February 10, 2020, the DHS filed a Petition for Temporary Custody for the Children, pursuant to HRS § 587A-11(8).  The DHS's petition alleged a number of safety issues, including (1) the hazardous living condition of the family home; (2) the presence of "drug paraphernalia, and empty pill bottles scattered about the unit," and (3) the educational neglect of three of the children.[8]  At the conclusion of the contested jurisdiction hearing on October 30, 2020, the Family Court invoked its jurisdiction, revoked temporary foster custody, and awarded foster custody of the Children to the DHS, finding the DHS met its burden of proving by a preponderance of the evidence that the Children's health or welfare was harmed or subject to threatened harm or neglect by Mother.

**The DHS investigation**

Mother contends the DHS failed to conduct an investigation, or to conduct an adequate investigation, and relied on "hearsay" allegations against her before removing the Children; and thus, the Family Court erroneously decided her MIL/MTD in this regard.  Mother also challenges FOFs 10, [32] and [35], which all concern the DHS investigation.  Mother's contentions are without merit.

"The granting or denying of a motion in limine is reviewed for abuse of discretion."  Kobashigawa v. Silva, 129 Hawaiʻi 313, 320, 300 P.3d 579, 586 (2013) (citation omitted).  "A trial court's ruling on a motion to dismiss is reviewed *de novo*."  Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008) (citation omitted) (italics in original).  Regarding the challenged FOFs:

---

[7]     Photographs documenting the state of the home were attached to the Safe Family Home Report filed February 10, 2020, and the photographs were also admitted into evidence at the contested jurisdiction hearing on October 30, 2020.

[8]     The DHS's petition stated that IC and AC's school was "filing a truancy petition" because the two children had missed 14 days of school for that quarter; and that LC's intermediate school "may be filing a truancy petition as well" because Mother had not officially contacted the Department of Education informing them she had removed LC to be "home schooled."

> [t]he family court's FOFs are reviewed on appeal under the clearly erroneous standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

In re Doe, 95 Hawaiʻi 183, 190, 20 P.3d 616, 623 (2001) (citations, quotation marks, and ellipsis omitted).

On February 5, 2020, the DHS received a report that the Children were subject to harm or threatened harm when Armstrong spoke with the KHAKO Executive Director about concerns regarding Mother's alleged drug use, the unsanitary condition of the home, that the children were not regularly attending school, and general neglect. Such allegations warranted that the DHS initiate an investigation.

The DHS conducted an investigation pursuant to HRS § 587A-11 (2018), which provides:

> Upon receiving a report that a child is subject to imminent harm, has been harmed, or is subject to threatened harm, and when an assessment is required by this chapter, the department shall cause such investigation to be made as it deems to be appropriate. In conducting the investigation, the department may:
>
> (1) Enlist the cooperation and assistance of appropriate state and federal law enforcement authorities, who may conduct an investigation and, if an investigation is conducted, shall provide the department with all preliminary findings, including the results of a criminal history record check of an alleged perpetrator of harm or threatened harm to the child;
>
> . . . .
>
> (8) File a petition or ensure that a petition is filed by another appropriate authorized agency in court under this chapter.

(Emphasis added). HRS § 587A-11 does not prohibit an investigation based upon hearsay information. In conducting an investigation, the DHS "shall cause such investigation to be made as it deems to be appropriate[,]" and the DHS was authorized to immediately assume temporary foster custody of the children and file a petition with the court within three days after assuming

such custody when conducting an investigation, not only upon the completion of an investigation.  See HRS § 587A-11.

Armstrong did not immediately assume temporary foster custody of the Children solely based upon a report of harm or threatened harm to the Children, however.  The record indicates Armstrong began her investigation by contacting the MPD to assist in determining whether police protective custody was necessary. In her testimony, Armstrong described Mother's unit as unsanitary, and "definitely not clean in any form or fashion." Armstrong personally observed belongings piled up in every space in the unit, along with trash and other garbage.  Armstrong's observations were similar to the pictures she had been shown during her meeting with KHAKO shelter staff:  the kitchen had dishes piled up with seemingly both clean and dirty dishes, there was trash on the floor instead of being placed in a receptacle, and a baby crib was filled with belongings.  Armstrong also interviewed each child, except for DG due to the child's age. One of the pictures Armstrong viewed was of a glass pipe with a bulbous end, which she characterized as drug paraphernalia constituting a safety concern because the Children had access to it; and the presence of the pipe also led her to believe drugs had been used in the unit.  Armstrong and the MPD police officers agreed that the living conditions in the unit were unsanitary, and not appropriate for the Children.  Two of the children were then taken into MPD protective custody at the unit, and the other two children were taken into custody at their school.

In this case, Armstrong was a social worker and supervisor with the DHS who signed the Petition for Foster Custody, the Safe Family Home Report, and the Supplemental Safe Family Home Report; and Armstrong was qualified, pursuant to HRS § 587A-19 (2018),[9] to be an expert in child protective or child

_____

[9]    HRS § 587A-19 provides:

   **[§587A-19]  Testimony by department social worker.**  A person employed by the department as a social worker in the area of child protective services or child welfare services shall be presumed to be qualified to testify as an expert on child

(continued...)

welfare services.  As such, it was not improper for Armstrong to
rely upon and testify about the hearsay allegations against
Mother, and for the Family Court to consider such evidence to the
extent of its probative value, notwithstanding any hearsay
content.  See In the Interest of LK, Nos. CAAP-18-0000393 and
CAAP-18-0000424, 2019 WL 912115 at *2-3 (App. Feb. 25, 2019)
(SDO) (admitting signed Safe Family Home Reports, by social
worker and supervisor, into evidence did not constitute
impermissible hearsay).

Thus, the record reflects that the DHS conducted an
appropriate investigation pursuant to HRS § 587A-11, after
receiving a report of harm or threatened harm that justified
removal of the children.  We disagree with Mother's assertions
that the DHS largely based its opinions, assessments and
recommendations on untrustworthy allegations of another KHAKO
shelter tenant.  Mother's contention that the DHS's investigation
consisted exclusively of hearsay evidence is not supported by the
record.  We conclude that the Family Court did not abuse its
discretion in denying Mother's MIL, nor was the Family Court
wrong for denying the MTD based on Mother's "lack of
investigation" arguments.  See Kobashigawa, 129 Hawaiʻi at 320,
300 P.3d at 586; Kamaka, 117 Hawaiʻi at 104, 176 P.3d at 103.
FOFs 10, [32], and [35] were supported by substantial evidence,
and were not clearly erroneous.  See Doe, 95 Hawaiʻi at 190, 20
P.3d at 623.

**MPD police reports and drug testing**

Mother contends she was deprived of due process, and
the Family Court abused its discretion in denying Mother's March
10, 2020 oral motions to order the DHS to provide police reports
and to strike the allegations in the petition and the Safe Family

---

[9](...continued)
protective or child welfare services.  Any party may move
the court to qualify a person employed by the department as
a social worker in the area of child protective services or
child welfare services called to testify as an expert on
child protective or child welfare services.

(Bolding in original).

Home Reports that Mother had a "drug glass pipe or baggies with drug residue or drug paraphernalia" where the DHS had no testing indicating a finding of methamphetamine. This contention is without merit.

Mother's argument is moot because the Family Court later granted Mother's request for the police reports on July 24, 2020, which Mother acknowledges in her Opening Brief. Mother does not provide authority or specific argument to support her contention that the Family Court erred by not granting her March 10, 2020 oral motion to strike allegations in the DHS's petition and Safe Family Home Report that accused Mother of having a drug pipe, baggies with drug residue, or drug paraphernalia, because the DHS did not have any testing that would result in a finding of methamphetamine. We do not address this argument. See Rules Expediting Child Protective Appeals (**RECPA**) Rule 11(a)(4) (requiring legal argument on each point of error); HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

Mother also claims that she was denied due process because she was denied "fair and meaningful access to police reports in DHS possession" pertaining to the drug allegations, which she raised, *inter alia*, in the MIL/MTD filed October 26, 2020. The MIL/MTD requested an order in limine preventing the DHS from referring to, or introducing any evidence of, any allegations that Mother used drugs with another KHAKO shelter tenant in Mother's unit on February 2, 2020 because the MPD police reports provided by the DHS were "so heavily redacted as to be useless for the purpose of informing Mother of names of individuals, and date and times of events that are relevant to supporting or challenging DHS' Petition and for preparing for trial." Mother did not request an order compelling production of unredacted police reports by the DHS; thus, this argument has not been preserved for appeal.

No police reports were admitted into evidence by the DHS at the contested jurisdictional hearing. Mother admitted Exhibit Q, Police Report No. 20-004663, into evidence, "not for substantive use but, again, to depict the obliterated nature of

pertinent information provided by DHS to Mother in discovery and the confusing nature of information regarding the drug testing." Mother did not object to the admission of the DHS's exhibits or testimony by Armstrong regarding allegations of drug use by Mother during the contested hearing after the MIL/MTD was denied. Mother cannot now complain about the admission of the MPD police report that she admitted into evidence.

Allegations of drug use by Mother made in the DHS's petition, the February 9, 2020 Safe Family Home Report, and the Supplemental Safe Family Home Report, were based upon information Armstrong received from others, or from MPD police reports. The Safe Family Home Reports were admitted into evidence pursuant to HRS § 587A-18(d) (2018), which provides, "A written report submitted pursuant to this section shall be admissible and relied upon to the extent of its probative value in any proceeding under this chapter, subject to the right of any party to examine or cross-examine the preparer of the report." Mother cross-examined Armstrong, the preparer of the report at the contested hearing in accordance with HRS § 587A-18. Thus, Mother's contentions regarding the police reports and drug use allegations are without merit. The Family Court did not abuse its discretion in denying the MIL, nor was the Family Court wrong for denying the MTD. See Kobashigawa, 129 Hawaiʻi at 320, 300 P.3d at 586; Kamaka, 117 Hawaiʻi at 104, 176 P.3d at 103.

**Mother's challenge to the remaining FOFs, COLs, and Orders**

We address Mother's challenges to FOFs 23, 27-28, [30], and [34], COLs 3, 4 and 5, and Orders 2 and 3.

A finding that "the child's physical or psychological health or welfare has been harmed or subject to threatened harm by the acts or omissions" of a parent requires the Family Court to exercise its jurisdiction. HRS § 587A-28(e) (2018). Prior to invoking the Family Court's jurisdiction and awarding foster custody to the DHS under HRS § 587A-28(e)(3)(A), the Family Court must find, *inter alia*, that remaining in the family home is contrary to the child's welfare, and that the parent is unwilling

or unable to provide a safe family home for the child, even with the assistance of a service plan.

As to foster custody of children, the Hawai'i Supreme Court has stated:

> The family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Under the abuse of discretion standard of review, the family court's decision will not be disturbed unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant, and its decision clearly exceeded the bounds of reason.

In Interest of Doe, 84 Hawai'i 41, 46, 928 P.2d 883, 888 (1996) (citations, quotation marks, and brackets omitted). "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact." In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001). Unchallenged findings of fact are binding on appeal. In re Doe, 99 Hawai'i 522, 538, 57 P.3d 447, 463 (2002).

As to FOF 23, Mother contends that it is clearly erroneous because the KHAKO shelter complaint only alleged a single tenant, not multiple "tenants," using drugs with Mother. FOF 23 is clearly erroneous only to the extent it states "tenants" in the plural, instead of finding only one tenant alleged using drugs with Mother. There was no evidence that more than one tenant alleged using drugs with Mother. We conclude this error is harmless, as there is nothing to suggest that only one tenant's alleged drug use with Mother, along with the other allegations, was insufficient to initiate an investigation by the DHS. See Doe, 95 Hawai'i at 190, 20 P.3d at 623.

As to FOF 27, Mother contends it is clearly erroneous based on Mother's testimony. Except for Mother's testimony that she burnt baggies and placed them in a vase in her room, the Family Court found Mother's remaining testimony not credible. See FOF 28.[10] Therefore, FOF 27 is not clearly erroneous merely

_____

[10] The last sentence of the unchallenged second misnumbered FOF 28 states: "The court finds Mother's testimony somewhat credible, as to her

(continued...)

because Mother's testimony is to the contrary.  Mother also asserts that the "wording" of FOF 27 improperly suggested the drug paraphernalia was "found together" with notes from Mother's guest.  Mother testified she placed burnt baggies in a vase in her room.  See FOF 28.[11]  Mother testified her guest wrote notes in a notebook, and she watched the guest because, "I'm not going to leave her in my room."  Mother's testimony indicates notes were found in the same room as baggies, which the DHS alleged was drug paraphernalia.  FOF 27 was supported by substantial evidence and is not clearly erroneous.  See Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

As to FOF 28, Mother contends it is clearly erroneous because Mother did not explicitly refuse the urinalysis test. The record reflects that Mother refused to participate in a urinalysis test on February 5, 2020, after being asked by Armstrong to do so.  Armstrong testified that Mother responded, "we'll talk later," regarding Armstrong's request that Mother participate in a urinalysis.  In response to Mother's counsel's question, "Why did you decline those?" Mother explained that she declined to do urinalysis testing when ordered by the court and when offered by Armstrong, because she had one false positive in the past and it was a violation of her rights.  FOF 28 was supported by substantial evidence and is not clearly erroneous. See Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

We also reject Mother's challenge to FOFs [30] and [34], which are not clearly erroneous because there was substantial evidence that the DHS exerted active efforts to avoid

_____

[10](...continued)
burning the baggies and putting it in the vase, but most of her testimony, not credible."  (Emphasis added).

[11]     The second sentence of the unchallenged second misnumbered FOF 28 states:

> Mother testified that she melted the bags when she found them in [Guest's] [sic] things because she thought they were baggies that might have something in them, but the burning made a funny smell and she then left the items in a vase in her room, the same room that the youngest child sleeps in a car seat.

foster placement. As noted in the footnote for FOF [30] and FOF 28, Mother was requested to participate in a urinalysis to avoid removal of the children, but she refused. Mother was also not willing or able to listen to any "agreements from the department," and an uncle who was caring for another of Mother's children (not one of the Children in this appeal), was unable to commit to help. Thus, FOFs [30] and [34] were supported by substantial evidence and are not clearly erroneous. See Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

"[W]hen a conclusion of law presents mixed questions of fact and law, we review it under the 'clearly erroneous' standard because the court's conclusions are dependent on the facts and circumstances of each individual case." JW v. RJ, 146 Hawaiʻi 581, 585, 463 P.3d 1238, 1242 (App. 2020) (citing Estate of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007)). "A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned." Id. "[T]he family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

COLs 3 and 5, and Orders 2 and 3, are "mixed" findings and conclusions dealing with the Family Court's ultimate determination, under HRS 587A-28(e), that the Children were subject to physical or psychological harm due to Mother's neglect. See JW, 146 Hawaiʻi at 585, 463 P.3d at 1242; Doe, 95 Hawaiʻi at 190, 20 P.3d at 623. The record reflects that the DHS conducted an appropriate investigation into the allegations, and did not adopt such allegations wholesale. Even though the DHS did not substantiate allegations that Mother used drugs with another tenant, or that Mother possessed methamphetamine, there was substantial evidence in the record to support the Family Court's conclusion that the Children were subject to threatened harm by Mother's acts or omissions due to neglect --

specifically, unsanitary conditions in the family home, indisputably depicted in the photographs, as well as the educational neglect of the Children.  The Family Court found Armstrong credible.  Mother also admitted she received a notice from the KHAKO shelter that she had failed a January 30, 2020 hygiene inspection.  Thus, COLs 3 and 5, and Orders 2 and 3 are not clearly erroneous, and reflect an application of the correct law under HRS § 587A-28(e).  See Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

Finally, Mother did not present any additional argument challenging COL 4, and simply claims that COL 4 is wrong because "there is no FOF to the effect that Mother was unable or unwilling or both to provide the children with a safe home."  COL 4 is more properly viewed as a finding of fact supported by substantial evidence, and it is not clearly erroneous.  See Kilauea Neighborhood Ass'n v. Land Use Comm. of the State of Hawaii, 7 Haw. App. 227, 229, 751 P.2d 1031, 1034 (1988) (accuracy of label affixed by agency as a finding of fact or conclusion of law freely reviewable by the appellate courts).

Therefore, IT IS HEREBY ORDERED that the Order Establishing Jurisdiction, Revoking Temporary Foster Custody, Granting Foster Custody, filed on November 4, 2020, in FC-S Nos. 20-1-0022, 20-1-0023, 20-1-0024, and 20-1-0025, by the Family Court of the Second Circuit, is affirmed.

DATED:  Honolulu, Hawaii, October 26, 2021.

On the briefs:

Davelynn M. Tengan
for Appellant

Asami M. Williams
Julio C. Herrera
Deputy Attorneys General
for Appellee

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge